(No. 6540.   July 15, 1938.)

GUS DYBVIG, Respondent, v. BERTHA L. WILLIS, Appellant.

[82 Pac. (2d) 95.]

A. L. Morgan and Murray Estes, for Appellant.

J. H. Felton and Guy W. Wolfe, for Respondent.

HOLDEN, C. J.—On or about June 1, 1935, Gus Dybvig, a contractor, and Bertha L. Willis, a widow, entered into a written contract whereby Dybvig agreed to repair and reconstruct, for the sum of $1,785, a residence owned by the widow, located in the town of Moscow. The contract contained the provision that: "This agreement shall be attached to the sketches as approved by the owner, and all shall be known as the plans and specifications for this contract, and shall be binding on both parties hereto." The "plans" referred to were not drawn to any scale, but were roughly sketched with a lead pencil. June 19, 1935, a supplemental agreement was entered into between the parties, whereby Dybvig agreed to perform additional work and supply all materials in further repairing and reconstructing the residence, for which the widow agreed to pay the additional sum of $125. The first contract provided, among other things, that

"The total cost to the owner shall be $1785 (seventeen hundred eighty five dollars), which shall be paid to the contractor as follows: One half upon the completion of the roof, as designed and shown. The remaining half shall be paid to the contractor upon completion of the job, and when the contractor has shown the owner that he has paid all bills, labor, material, etc., and has protected the owner from any loss whatsoever. All labor and all subcontractors shall be paid by

the owner, and shall be deducted from any money due the contractor."

Shortly after the first contract was entered into, Dybvig began repairing and reconstructing the residence. About the end of the month, he claimed to have completed the roof and requested payment of one-half of the contract price.

July 3, 1935, Bertha L. Willis notified Dybvig, in writing, "that if you do not have skilled laborers, approved by me, on the property under contract with you, at work, Friday morning, July 5th, at 8 o'clock, I shall be obliged to put laborers to work in order to protect the property and furnishings."

The owner did not pay, as demanded by the contractor, and the contractor did not comply with the above demand of the owner. July 23, 1935, Dybvig filed a claim of lien, in substance, as follows: That, as an original contractor, he claimed a lien upon certain property, describing it; that said claim of lien was for materials furnished and labor performed in the repair and reconstruction of the residence located on the lot described in the claim of lien; that Bertha L. Willis was the owner of the real estate so described; that about June 1, 1935, she employed claimant to perform labor and furnish materials for repairing and reconstructing the dwelling, and to draw plans and specifications for such repair and reconstruction for the total consideration of $1,785; that thereafter she agreed to pay the additional sum of $125 for extra work and labor not included in the original contract; that, on or about June 1, 1935, claimant began work and labor and the preparation of plans and specifications for the repair and reconstruction of the dwelling; that claimant faithfully performed and complied with "all of the agreements contained between the said Bertha L. Willis and said claimant, Gus Dybvig, and had performed labor upon said dwelling house up to the 3rd day of July, 1935, of the reasonable value of Six Hundred Eighteen and 20/100 Dollars ($618.20) and had furnished materials in the reconstruction and repair of said building in the total sum of Three Hundred Ninety-seven and 88/100 Dollars ($397.88)"; that it was further agreed between the parties that one-half of the $1,785 should be paid when the new roof was placed on the building; that the roof

was placed on the building prior to July 3, 1935; that Bertha L. Willis "refused to pay the one-half (½) of the contract price, or one-half (½) of Seventeen Hundred Eighty-five Dollars ($1785.00), according to said contract"; that on the 3d day of July, 1935, she notified claimant that she would refuse to perform her part of the contract or pay any part of the contract price, save and except $500, which had already been paid; that the amount he claimed "for the reasonable value of the labor performed and furnished by the said Gus Dybvig is the sum of Six Hundred Eighteen and 20/100 Dollars ($618.20)"; that the "reasonable value of all materials furnished by the said Gus Dybvig therefor is the sum of Three Hundred Ninety-seven and 88/100 Dollars ($397.-88), and that no part thereof has been paid except the sum of Five Hundred Dollars ($500.00)."

October 18, 1935, Dybvig filed a complaint against Bertha L. Willis, in which, so far as material here, it was alleged: That on or about June 1, 1935, defendant employed plaintiff to perform certain labor and furnish certain materials for the repair and reconstruction of a dwelling on a certain parcel of land, describing it; that plaintiff agreed to repair and reconstruct the dwelling "upon plans and specifications"; that defendant agreed to pay $1,785 therefor; that on or about June 19, 1935, a supplemental agreement was entered into for additional materials and labor for which defendant agreed to pay $125; that plaintiff "began work and labor on the preparation of plans and specifications for such repair and reconstruction, and furnished part of the materials therefor, according to the plans and specifications, and continued to perform labor on said dwelling house of the reasonable value of Six Hundred Eighteen and 20/100 Dollars ($618.20), and also furnished materials for the repair and reconstruction of said building of the reasonable value of Three Hundred Ninety-seven and 88/100 Dollars ($397.88)"; that it was further agreed between plaintiff and defendant that one-half of the contract price was to be paid at such time as a new roof was placed on the building; that the roof was placed on the building prior to July 3, 1935; that defendant refused to pay one-half of the contract price according to the contract; that

July 3, 1935, defendant notified plaintiff he was discharged from such work and "that she refused to pay any part or portion thereof, save and except the sum of Five Hundred Dollars ($500.00)"; "that on the 23rd day of July, 1935, plaintiff duly executed, acknowledged and filed a claim of lien as an original contractor, a copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof, and that such claim of lien was duly recorded in the office of the County Recorder of Latah County, State of Idaho"; "that plaintiff has elected to bring suit for the reasonable value of the work and labor performed and materials furnished by him in the repair and reconstruction of such dwelling house, and that plaintiff has agreed to pay a reasonable attorney's fee for the foreclosure of such lien, and plaintiff alleges that Fifty Dollars ($50.-00) is a reasonable attorney's fee to be allowed the plaintiff in this action if this complaint is not contested, and the sum of One Hundred Dollars ($100.00) if this complaint is contested by said defendant"; "that there is now due and owing the plaintiff for the reasonable value of the work and labor performed and materials furnished under said contract the sum of Five Hundred Sixteen and 08/100 Dollars ($516.08), together with the sum of Seven and 50/100 Dollars ($7.50) for the preparation and recording of said lien, and attorney's fees in the amount of money herein alleged."

January 31, 1936, defendant answered. She admitted the execution of both contracts mentioned in the complaint; denied that any labor was performed or materials furnished according to plans and specifications; denied that labor was performed on the dwelling house of the reasonable value of $618.20, or of any value, or at all; denied that material was furnished for the repair and reconstruction of the house of the reasonable value of $397.88, or of any value, or at all, except as alleged in her affirmative defense; and generally denied the material allegations of the complaint, except as above stated.

By an affirmative defense, it was pleaded that the labor performed in the repair and reconstruction of the dwelling was performed in a careless and negligent manner; that the building was not properly braced; that the floor would scarcely

bear its own weight; that it sagged in the center; that the roof was not constructed in a good workmanlike manner; that on the 3d day of July, 1935, she demanded that the plaintiff perform his contract, that he construct the building in a substantial manner, and that he properly brace the building, all of which it was alleged the plaintiff refused to do; that defendant paid all the laborers employed on the building up to July 3d, 1935, and thereupon took over the work of repairing the building; that in order to properly repair the building, it was necessary to and "she did cause to be torn out the greater portion of the work done by the plaintiff herein at great expense and thereafter reconstructed and completed said building according to the plans and specifications"; that defendant was compelled to "and did pay a total price for completion of said contract, including the amounts paid to plaintiff, the total sum of $2579.11"; that of that amount she paid $222.40 to the men employed by the plaintiff; that she paid the plaintiff $58.62; that defendant paid for all the material used in the construction of the building; that, therefore, "plaintiff has earned nothing under said contract."

Upon the issues so formed by the pleadings, the case was tried to the court, sitting without a jury, October 1, 1937. Findings of fact and conclusions of law were filed December 6, 1937, and on the 8th, judgment was entered thereon in favor of plaintiff and against defendant, from which defendant appealed.

Appellant contends that respondent filed a claim of lien as a contractor; that, therefore, he must stand upon his contract; that respondent did not sue upon his contract, consequently his complaint does not state a cause of action; that instead of suing on the contract, respondent elected to sue for the reasonable value of the labor performed and materials furnished, thereby abandoning his contract, and that our statute does not give a contractor a lien for such labor and services.

Which presents the question: Where an owner breaches a contract (as found by the trial court in the case at bar) for the repair and reconstruction of a building, is the contractor protected by lien under the provisions of our statute, "Liens

of Mechanics and Materialmen," chapter 5, secs. 44–501 to 44–516, incl., I. C. A., for and in the amount of the reasonable value of the labor performed and materials furnished to the date of the breach of the contract?

This court has held repeatedly that the provisions of our lien laws must be liberally construed with a view to effect their objects and promote justice. (*Phillips v. Salmon River Min. etc. Co.,* 9 Ida. 149, 72 Pac. 886; *Naylor & Norlin v. Lewiston etc. Ry. Co.,* 14 Ida. 789, 805, 96 Pac. 573; *Abernathy v. Peterson,* 38 Ida. 727, 225 Pac. 132; *Boise Payette Lumber Co. v. Sharp,* 45 Ida. 611, 264 Pac. 665; *Gem State Lumber Co. v. Union G. & E. Co.,* 47 Ida. 747, 278 Pac. 775; *Poynter v. Fargo,* 48 Ida. 271, 281 Pac. 1111.)

Bearing in mind that our lien statute protects a contractor for all labor performed and materials furnished in either constructing or reconstructing a building, and that such statute must be liberally construed with the object in view of promoting justice, can the owner of a building reconstructed by a contractor deprive him of the protection of the statute by breaching the contract under which the labor was performed and materials furnished? To deny the contractor protection under such circumstances would be most unjust and would defeat the clear purpose and intent of the statute. Moreover, it would permit the owner to take advantage of, and profit by, his own wrong.

In his claim of lien, as well as complaint, respondent alleged, among other things, that appellant employed him to draw plans and specifications for the repair and reconstruction of her residence, and appellant contends that respondent is not entitled to a lien for such services. The answer to that contention is that it is impossible to determine from an examination of the record that the trial court actually allowed respondent anything for such services, because it simply found that the reasonable value of the labor and materials furnished by respondent amounted to the lump sum of $991.58.

Appellant also contends that respondent is not entitled to a lien for planning and directing the work of repairing and reconstructing the dwelling. Respondent testified he was in active charge of the construction work and that

he worked most of the time with the carpenters. The record does not show how much time respondent spent in directing and planning the work, nor how many days or hours of actual labor he performed. But it does show that he did spend some time in planning and directing the work as the work progressed. This court passed upon the question as to whether a claimant was entitled to a lien under section 44–501, I. C. A., for services in planning and directing work, in the recent well-considered case of *White v. Constitution Min. & Mill. Co.*, 56 Ida. 403, 412, 413, 414, 415, 416 and 417, 55 Pac. (2d) 152, where many cases are reviewed on that question. In that case, it appears White's duties were to inspect a mine, personally plan the work to be done by the men, inspect the work, and help with the work when necessary; that he worked with the men and alone; that he worked with the men in cleaning a compressor after a landslide and personally planned, directed, and superintended the work of others, and helped with the work when necessary, as the respondent did, from time to time, in the case at bar. We held that White was entitled to a lien for such services under section 44–501, *supra*. To the same effect, see *Naylor v. Lewiston etc. Ry. Co., supra*. We conclude that respondent is entitled to a lien under said section for services in planning and directing the work of repairing and reconstructing appellant's residence.

It is urged by appellant that where, as in the case at bar, no allegation is made and no proof produced at the trial "relative to the amount of land necessary for the use of a structure, on which a mechanics lien is being foreclosed, a finding by the Court that all of the lands described is necessary will not support the judgment and is not within the issues." Appellant cites three California cases (*Green v. Chandler*, 54 Cal. 626; *Willamette S. M. Co. v. Kremer*, 94 Cal. 205, 29 Pac. 633; *Kern v. San Francisco Co.*, 19 Cal. App. 157, 124 Pac. 862) so holding. Our statute, sec. 44–505, I. C. A., provides that "The land upon which any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the

court on rendering judgment, is also subject to the lien, . . . . ''

In *Robertson v. Moore,* 10 Ida. 115, 127, 128, 77 Pac. 218, the trial court, as in the instant case, failed to comply with the above-quoted provision of the statute. While this court held that failure to comply with the statute was error, and remanded the case to the trial court with instructions ''to ascertain the amount of land required for the convenient use and occupation of the property,'' and ''if necessary, call witnesses for such purpose; and after such fact is ascertained make a proper finding and modify the judgment accordingly,'' we did not hold that pleading the amount of land required for the convenient use and occupation of the property was necessary to state a cause of action for the foreclosure of the lien, because it was alleged in the Robertson case, *supra,* that all the mining claims were required for the convenient use and occupation of the mill building; consequently, the question as to whether it was, or was not, necessary to allege the amount was not presented to this court for decision. The statute (sec. 44–505, *supra*) makes it the duty of the trial court to determine the amount of land required for the convenient use and occupation of any ''building, improvement or structure,'' and, of course, it would be necessary for the court to take evidence to enable it to perform that statutory duty. Inasmuch as the statute imposes that duty upon the trial court, it is not necessary to allege the amount of land required, as contended by appellant.

During the course of the trial, appellant objected to the admission in evidence of a time book kept by respondent's son, upon the ground that it did not show respondent's time nor materials furnished, which objection the court overruled, and appellant assigns that ruling as error. The record shows that Loyal Dybvig was charged with the duty of keeping the time of the men employed on the residence; that, as timekeeper, he entered in the time book from day to day the number of hours' labor each man performed. The time book was, therefore, admissible for whatever it showed in relation to the number of hours of labor performed by such workers.

Appellant further contends that the proof does not support the amount found due respondent by the trial court. With respect to the labor performed by respondent, it appears from the record that respondent's time was not kept from day to day; that it was computed by the timekeeper after the work of repairing and reconstructing the residence had stopped, "by the total number of days that he had men on the job, and giving him one week beforehand that he worked on the job, drawing plans and getting the work ready to go"; that the timekeeper gave his father 28 days at $10 per day; that during the period the work of reconstructing the Willis residence was under way, respondent was directing and supervising other jobs; that prior to the time actual work began on the residence, respondent spent about six days "either arranging for or in handling this job." Due to the fact that respondent, during the period of the reconstruction of the Willis residence, spent some time, how much does not appear, directing and supervising other jobs, as above pointed out, and that the timekeeper, as well as the respondent, failed to record respondent's time on the Willis residence, it is impossible to determine, with any degree of accuracy, how much time respondent spent on the Willis residence in actual labor and in planning, directing, and supervising the work, and that, in turn, makes it impossible to determine how much respondent is entitled to recover.

The evidence is insufficient to support the findings and decree in another particular. The record shows that Ben Domaries performed 49 hours' labor on the Willis residence at $1 per hour. On the issue as to who paid Domaries for such labor, the timekeeper testified on direct examination:

"Q. And how much was he (Domaries) paid, according to your time book?

"THE COURT: By Mrs. Willis.

"Q. Can you tell whether it was paid by Mrs. Willis?

"A. I cannot tell whether it was paid by Mrs. Willis. I simply have it marked it was paid; in twenty dollars and twenty dollars and nine dollars."

From that testimony and the time book, it is established that somebody paid Domaries, but the question is who? Loyal

Dybvig, son of respondent, and timekeeper, must have known at the time he made each entry, not only that a payment had been made to Domaries, but also who made it. Can there be any doubt that if the father made the payments, and not the appellant, the son would have made his time book show that also? Furthermore, we have not found, and counsel for respondent have not pointed out, any evidence showing that respondent made any of the payments.

The judgment is reversed and the cause remanded with the following instructions to the trial court: To take further evidence on the question as to how many hours' work respondent performed on the Willis residence in actual labor and in planning, directing, and supervising the work; to also take further evidence on the question as to who paid Domaries; to take evidence on the question as to the amount of land required for the convenient use and occupation of the Willis residence, make appropriate findings, and enter judgment accordingly.

Costs awarded to appellant.

Budge, Givens and Ailshie, JJ., concur.

Morgan, J., deeming himself to be disqualified, did not sit with the court at the hearing nor participate in the decision.

Petitions for rehearing denied.