700 P.2d 109

BEALL PIPE & TANK CORPORATION, an Oregon corporation, Plaintiff-Appellant,

v.

TUMAC INTERMOUNTAIN, INC., a Utah corporation; Fred L. Richardson and Trylla F. Richardson, husband and wife; Thomas F. Richardson and Betty L. Richardson, husband and wife; Frank C. Unquera, Jr. and Christine Joyce Unquera, husband and wife; et al., Defendants-Respondents.

No. 14271.

Court of Appeals of Idaho.

April 30, 1985.

Larry L. Goins of Hopkins, French, Crockett & Springer, Idaho Falls, for plaintiff-appellant.

Curt R. Thomsen of Holden, Kidwell, Hahn & Crapo, Michael R. Orme of Hansen, Boyle, Beard & Martin, John M. Ohman of Cox & Ohman, Idaho Falls, C. Walker Lyon, Salmon, for defendants-respondents.

SWANSTROM, Judge.

This appeal comes to us from the grant of a Rule 41(b) motion for involuntary dismissal. The plaintiff-appellant, Beall Pipe and Tank Corporation, supplied mainline irrigation pipe to the defendant, Tumac Intermountain, Inc. Tumac had contracted with the Unqueras to sell and install the pipe as part of an irrigation system Tumac built for the Unqueras in Lemhi County, Idaho. The Beall pipe, laid underground, was used to divert water from Patterson Creek to farm lands being purchased by the Unqueras from people named Richardson. There the water would be applied by means of a large above-ground pivot irrigation system, also installed by Tumac. Eastern Idaho Production Credit Association (EIPCA) took an assignment of the land sale contract between the Unqueras and the Richardsons to secure a loan for the operation of a ranch upon the property. Simlog Leasing Corporation provided financing for the irrigation system under a purchase-lease back arrangement with the Unqueras. The Unqueras, the Richardsons, EIPCA and Simlog were all defendants below and are respondents on appeal.

Beall filed a materialman's claim of lien on the property being purchased by the Unqueras. After Tumac failed to pay for the pipe, Beall brought an action to foreclose the lien. Trial was held before the court without a jury and, when Beall had elected to rest its case, defendants moved for an involuntary dismissal under I.R.C.P. 41(b). Before the court ruled on the motion, defendants rested their case without presenting any evidence. The district court then granted the motion, finding that the property description in the claim of lien covered three noncontiguous parcels and that the irrigation pipe could benefit only one of the three. The court held there was insufficient evidence to identify the specific parcel benefitted by the pipe and therefore the lien must fail. Beall appealed. We reverse and remand.

Beall's four issues on appeal concern whether: (1) the district court erred in granting defendant's motion for involuntary dismissal; (2) Beall has a materialman's lien that is prior to the interest of EIPCA; (3) the district court abused its discretion in not granting Beall's motion for a new trial; (4) Beall is entitled to its reasonable attorney fees and costs incurred in this action under I.C. § 45–513.

Our Supreme Court has held that

when a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff. ... Thus, in rendering a judgment pursuant to the defendants' motion for dismissal under I.R.C.P. 41(b), the trial court is not as limited in its evaluation of the plaintiff's case as it would be in a motion for directed verdict. The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether plaintiff has made out a prima facie case. Instead, it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.

*Keenan v. Brooks*, 100 Idaho 823, 825, 606 P.2d 473, 475 (1980) (citations omitted). The district court, if it grants the motion, is

required to make findings of fact. I.R.C.P. 41(b). On appeal, we will not disturb the court's findings of fact unless they are clearly erroneous. I.R.C.P. 52(a).

## I

■ Generally, a materialman has a right of lien against a building, structure or other improvement for which he has supplied materials. I.C. § 45-501. He also has a lien against the land upon which improvement is constructed, "together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment." [1] I.C. § 45-505. To obtain the benefits of the lien statutes, a materialman must file a claim of lien which contains a "description of the property to be charged with the lien." I.C. § 45-507. The property must be described sufficiently "to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others." *Treasure Valley Plumbing and Heating, Inc. v. Earth Resources Company*, 106 Idaho 920, 923, 684 P.2d 322, 325 (Ct.App.1984) (quoting *Turnboo v. Keele*, 86 Idaho 101, 105, 383 P.2d 591, 593 (1963)).

On appeal, respondents argue, as the district court held, that the description in the claim of lien was overly broad. Moreover, because Beall allegedly did not prove what and how much land was required for the convenient use and occupation of the improvement, respondents contend the claim of lien must fail. Finally, they maintain that Beall is not entitled to a lien against the materials or the land because Beall relied only on the personal credit of Tumac and not on the lienability of the property.

### A

■ We note first that a claim of lien is not invalid simply because it describes more property than is properly subject to the lien. *White v. Constitution Mining*

*and Milling Co.*, 56 Idaho 403, 55 P.2d 152 (1936). So long as there is no fraudulent intent on the part of the lien claimant and no one is injured by the overly broad property description, the land properly subject to the lien is for the court to determine, after hearing all the evidence. *Id.* There was no evidence that Beall had a fraudulent intent in describing the property in the claim of lien, nor was anyone injured by it. The property descriptions contained in the recorded claim of lien were complete and unambiguous. Furthermore, after a careful examination of the evidence, we hold that Beall adduced sufficient proof to show upon which of the noncontiguous parcels the improvement was constructed.

To begin with, the property description in the claim of lien describes four noncontiguous parcels—not three, as the district court assumed. It describes two parcels of 160 acres, one of which is square, the other of which is L-shaped. A third parcel is less than 120 acres, bordering on the Pahsimeroi River. The group of these three smaller parcels lies more than six miles away from the fourth parcel of 840 acres. Eldon Kelly, a sales manager for Beall, had twice visited the Unquera property before the trial. He testified he had observed a "Tumac" pivot system having thirteen towers with spans varying between 60 and 140 feet. There was a twenty-foot boom extending past the last tower. The pivot system irrigated a half-circle. He testified that by studying some documents he could estimate the area irrigated by the pivot at approximately 320 acres. He later stated that, by his own observation, the area irrigated by the half-circle would "have to be" greater than 160 acres.

■ Kelly's testimony, uncontradicted in pertinent part at trial, demonstrates that the irrigation pipe could be located on only one of the parcels described in the claim of lien—the only parcel over 160 acres, i.e., the 840-acre parcel. By platting the property description in the claim of lien, it ap-

---

1. If the materials purchaser does not own the land, such interest in the land as he has is subject to the lien. I.C. § 45-505.

pears that the maximum radius of the pivot system, if it is to fit on either 160-acre parcel, is one-quarter mile. A half-circle irrigation system a quarter mile in radius irrigates only about sixty-three acres—not the 160 acres estimated by Kelly as the minimum area covered by the pivot. Moreover, Kelly testified that he observed pipe at the point of diversion and identified it as Beall pipe similar to that which Beall had shipped for the Unquera project. Kelly stated that the pivot itself was more than one, but less than two miles from the point of diversion in Patterson Creek, with indications of recent trenching between the two points. We note that Tumac had ordered some two miles of irrigation pipe. Kelly further testified that Mr. Unquera approached him while Kelly was observing the system, acknowledged that he owned the property and told him that the irrigation pipe had been received and installed. Kelly testified that the pivot arm of the system would extend almost to the "Patterson school." This information, coupled with the property descriptions in the claim of lien, would enable anyone familiar with the locality to determine with reasonable certainty that the Beall pipe for which the lien was claimed had been delivered to and had been installed on and adjacent to the 840 acre parcel of Unquera land described in the claim of lien to the exclusion of others. *See Treasure Valley Plumbing and Heating, Inc. v. Earth Resources Company, supra. Cf. Chamberlain v. City of Lewiston*, 23 Idaho 154, 129 P. 1069 (1912) (a description of property making reference to the Clearwater River was sufficient to support a lien). Had the district court here platted the property descriptions in the claim of lien instead of assuming they were insufficient, it would then have been clear to the court upon which parcel the irrigation system was located.[2]

## B

■ We recognize, of course, that the entire parcel is not necessarily properly

subject to the lien. Only the land upon which the improvement is located and so much as may be required for the convenient use and occupation of the improvement is subject to the lien. I.C. § 45–505. Because the district court did not determine which of the four parcels the irrigation system called home, it obviously made no finding on this question. Respondents argue that Beall failed to prove where on the parcel in question the improvement was located and how much land was required for its convenient use and occupation. Idaho Code § 45–505, however, states that the duty to determine what land is subject to the lien rests with the district court. Our Supreme Court has held that, because this duty is on the court, the lien claimant need not even allege in his complaint the amount of land required. *Dybvig v. Willis*, 59 Idaho 160, 82 P.2d 95 (1938). In *Dybvig*, the district court found in favor of the lien claimant and subjected all of the property described in the complaint to the lien. Our Supreme Court reversed and remanded, noting that no proof was adduced at trial as to the amount of land necessary for the convenient use and occupation of the improvement. On remand, the district court was instructed to carry out its statutory duty to determine the land which was subject to the lien *and* to take additional evidence to do so. *Accord Idaho Lumber & Hardware Co. v. DiGiacomo, supra; Robertson v. Moore*, 10 Idaho 115, 77 P. 218 (1904). There was also no proof in the present case concerning the land required for the convenient use and occupation of the improvement. Under the authority of *Dybvig, Idaho Lumber*, and *Robertson*, we must reverse and remand, with instructions to the district court to take additional evidence and determine what land is properly subject to Beall's lien.

■ For guidance on remand, we draw the district court's attention to the following cases. In *Dysart v. Youngblood*, 44 N.M. 351, 102 P.2d 664, 666 (1940), the

2. Respondents argue that not all the materials supplied by Beall were incorporated into the irrigation system. This is immaterial to the fact

of Beall's lien. *See Chamberlain v. City of Lewiston, supra; Idaho Lumber & Hardware v. DiGiacomo,* 61 Idaho 383, 102 P.2d 637 (1940).

phrase "so much as may be required for the convenient use and occupancy thereof" was held to mean "all the land benefited." The New Mexico court further stated that the "statute lodges with the trial court a wide discretion in determining the extent of the land 'about' the structure which may be said to be reasonably required for the 'convenient use and occupation' of the improvement." *Id.* 102 P.2d at 667. *See also Durfee v. Parker*, 90 Idaho 118, 410 P.2d 962 (1965); *Western Well Works, Inc. v. California Farms Co.*, 60 Cal.App. 749, 214 P. 491 (1923). Furthermore, the court in *Anselmo v. Sebastiani*, 219 Cal. 292, 26 P.2d 1, 3 (1933), said that the "determination of this area must take into consideration the intended use for which the building is erected." The district court here must therefore consider the intended use of the irrigation system, i.e., whether it was intended only to operate the single half-circle pivot or whether it was intended to benefit the entire parcel by the later addition of other pivots. *Cf. Springer Land Association v. Ford*, 168 U.S. 513, 18 S.Ct. 170, 42 L.Ed. 562 (1897) (an irrigation ditch constructed on a strip of land sixty feet wide and twenty-six miles long was held to benefit a tract of 22,000 acres, because the parties so intended).

### C

▮▮▮ Respondents also argue that Beall is not entitled to a lien because Beall relied only on the personal credit of Tumac. To obtain a lien against the land upon which the improvement is constructed, the lien claimant must have relied upon the credit of the land for payment and not merely on the personal credit of the purchaser. *Cf. Layrite Products Company v. Lux*, 91 Idaho 110, 416 P.2d 501 (1966) (materials furnished for a building must have been furnished on the credit of the building, not merely on the personal credit of the owner, contractor or some other

person). Here, the district court found that Beall did indeed rely on the "lienability of the installation," as well as the personal credit of Tumac. Respondents argue that this finding was in error.[3] It will suffice to say that the record contains sufficient evidence to support the district court's finding. *See* I.R.C.P. 52(a).

### II

▮▮▮ We have held that Beall has a valid lien to an extent to be determined on remand. It will therefore be necessary for the district court also to determine the priorities of the various interests in the property. The priority date of a lien for materials is the date materials "were commenced to be furnished." I.C. § 45–506. Although the claim of lien is usually filed after all the materials have been furnished, the lien relates back to the date on which materials were *first* furnished by the claimant. *White v. Constitution Mining and Milling, Co., supra.* The question becomes: "What does it mean to 'commence to furnish materials'?" In *Walker v. Lytton Savings and Loan Association of Northern California*, 2 Cal.3d 152, 84 Cal.Rptr. 521, 524, 465 P.2d 497, 500 (1970), it was held that "the general rule is that such a lien does not attach unless and until ... the delivery of construction materials" to the site. Idaho apparently adopted this rule as early as 1905. *See Pacific States Savings, Loan and Building Company v. Dubois*, 11 Idaho 319, 83 P. 513 (1905). In *Dubois* our Supreme Court also cited the Washington case of *Mechanics' Mill & Lumber Co. v. Denny Hotel Co.*, 6 Wash. 122, 32 P. 1073 (1893). The Washington Supreme Court said:

Appellant contends that it commenced to furnish materials from the time that it began to prepare the same for shipment in the state of Iowa, and, in consequence of its having commenced the preparation

---

3. On appeal, Beall moved to strike this argument from respondents' brief. Beall asserts that because respondents filed no cross appeal they have no right to now argue that the judge's finding was erroneous. Because we decide the finding was not clearly erroneous, we do not need to determine whether respondents have a right to challenge the finding on appeal. Consequently, we will not address the merits of the motion to strike.

thereof before the execution of the mortgage, its lien is superior to the mortgage lien. But the lien can hardly date from the time appellant commenced the preparation of the materials in another state. It was to furnish the materials delivered at the building in the city of Seattle, and its claim cannot be held to have attached before the delivery thereof. *Williams v. Chapman*, 65 Amer.Dec. 669, 17 Ill. 423.

32 P. at 1076. We hold that the priority date of Beall's lien is the date materials were first delivered to the site where they were to be used. Beall has the burden of proving when materials were first delivered to the site. The district court may allow additional evidence on this question from all the parties before determining priority.

Beall has requested attorney fees on appeal under I.C. § 45–513. Such an award is not authorized by that statute. *See Hendrix v. Gold Ridge Mines, Inc.*, 56 Idaho 326, 54 P.2d 254 (1936); *W.F. Construction Company, Inc. v. Kalik*, 103 Idaho 713, 652 P.2d 661 (Ct.App.1982). An award may be made under I.C. § 12–121, but only if the appeal was brought or defended frivolously, unreasonably or without foundation. None of those criteria is satisfied here.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs to appellant. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.