982 P.2d 375

**Larry FAIRFAX, Plaintiff–Respondent– Cross Appellant,**

v.

**Timothy Louie RAMIREZ and Christine Anne Ramirez, husband and wife, Defendants–Appellants–Cross Respondents.**

No. 23888.

Court of Appeals of Idaho.

Aug. 9, 1999.

Timothy Louie Ramirez; Christine Anne Ramirez, Sandpoint, pro se appellants. Timothy Louie Ramirez argued.

Jonathan W. Cottrell, Sandpoint, for respondent.

SCHWARTZMAN, J.

## I.

## FACTS AND PROCEDURE

In the spring of 1995, Larry Fairfax performed work on property, as well as on a private road leading to the property, of Timothy and Christine Ramirez. The road, located upon an easement owned by the Ramirezes, crosses a number of neighboring parcels. Fairfax graded and placed gravel on this easement road in order to improve access and enable him to perform the requested work on the property. On the property itself, Fairfax installed a septic tank system, removed rocks and tree stumps, placed gravel on the driveway and dug out and shaped an existing holding pond. The Ramirezes paid for the septic tank system installation in full. However, they refused to pay the charges for work done on the easement road, driveway and holding pond, asserting that they did not have a contract with Fairfax for that work. Instead, they asserted that a neighbor had contracted for the work on the road, that the work on the driveway was done in exchange for labor

provided by Tim Ramirez, and that the work on the pond was unauthorized.

Not having been paid, Fairfax filed a lien on the Ramirezes' property and later filed a foreclosure action on the lien. The attorney hired by Fairfax to represent him in this matter was the same attorney who had previously helped the Ramirezes' file a declaration of homestead on their property in 1990 in preparation for a bankruptcy filing. The Ramirezes filed an answer *pro se*, later amended by counsel, which denied that they had a contract with Fairfax for the roadwork. They also filed a cross-complaint which asserted that: 1) the septic tank was improperly installed resulting in damage to the Ramirezes; and 2) Fairfax entered the Ramirezes' property without permission and damaged their holding pond. Following a bench trial, the district court held that the parties had orally contracted for all of the work performed by Fairfax, and that the septic tank had been properly installed in the location chosen by Tim Ramirez. However, the court found that neither I.C. § 45–501 nor § 45–505 conferred a right to subject the Ramirezes' property to a lien for any work done on the easement road. Accordingly, although the court awarded Fairfax a judgment for the full amount still owing,[1] the court allowed a lien on the property only for the amount reflecting work done within the bounds of the property, including the driveway loop and pond repair. With respect to the remaining counter-claim, the court found that Fairfax had competently worked on the pond according to an oral contract made with the Ramirezes, thereby denying the Ramirezes any recovery. Finally, the court awarded Fairfax attorney fees pursuant to I.C. §§ 45–513 and 12–120(3).

The Ramirezes filed *pro se* a notice of appeal from the memorandum decision on the bench trial. Counsel for the Ramirezes also filed a motion for reconsideration and clarification, for which a hearing was held. Following this hearing the district court filed a supplemental opinion in which it found that Fairfax was the trial's prevailing party and awarded pre-judgment interest on the princi-

---

1. The court gave the Ramirezes credit for the $1,400 they had already paid for the septic tank installation, and for $1,164 which had previously been contributed by a neighbor for the roadwork.

pal judgment pursuant to I.C. § 28–22–104. In a later hearing, the court modified the award of attorney fees, disallowing $603, which was the amount attributable to Fairfax's attorney's time for legal work done on the lien issue. The final judgment reflects an award of $600, plus interest, for work done on the property which is secured by a lien on the property; $3,236, plus interest, for work done on the easement road and not secured by a lien; and $4,886 in attorney fees.[2] Fairfax filed a notice of cross-appeal from this judgment. Counsel for the Ramirezes' withdrew from the case, and the Ramirezes filed *pro se* an amended notice of appeal.

## II.

### STANDARD OF REVIEW

A trial court's findings of fact "which are supported by substantial and competent, although conflicting, evidence will not be set aside on appeal." *Kootenai Elec. Co-op. v. Washington Water Power Co.*, 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995). This Court will liberally construe the lower court's findings of fact in favor of the judgment entered. *Id.* at 434–35, 901 P.2d at 1335–36. The credibility and weight given to the evidence is in the province of the trial judge as the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous. *Id.* at 435, 901 P.2d at 1336. With respect to the trial court's conclusions of law, this Court "is not bound by the legal conclusions of the district court and is free to draw its own conclusions from the facts presented." *Id.*

*The Highlands, Inc. v. Hosac*, 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997).

## III.

### ANALYSIS

**A. The Ramirezes' Claims On Appeal**

▆ The Ramirezes assert that the district court erred when it found that they had orally contracted with Fairfax for the work

done on the easement road, driveway and holding pond. Notwithstanding this assertion, the record reveals substantial and competent evidence to support the trial court's findings of fact.

Although the Ramirezes dispute the veracity of witnesses who testified that Tim Ramirez agreed to pay for the work completed on the easement road and driveway, the district court disagreed, finding that Fairfax's "factual presentation is the more believable ." Larry Fairfax and two other men who had worked on the project testified that they heard Tim Ramirez state that he would be responsible for the entire cost of the road work. Furthermore, the district court noted that although Tim Ramirez admitted being told the septic tank would cost only $1,400, he originally attempted to raise $4,000 to fund the project. Finally, in a video tape made by Tim Ramirez, he stated that he "would have paid for it" if more gravel had been placed on the driveway. This substantial and competent evidence supports the district court's determination that Tim Ramirez contracted with Larry Fairfax for the work done on the driveway and easement road.

The district court also found that the Ramirezes orally contracted with Fairfax for the work done on the holding pond. At trial, Fairfax testified that Tim Ramirez requested that he make the existing holding pond deeper and that he refrain from including a culvert in the pond. On the other hand, Tim Ramirez testified that he never discussed the pond with Fairfax. Instead, he asserted, Fairfax had entered the Ramirez property without permission and destroyed the existing pond, later fixed the damage and then sneaked back onto the property and again destroyed the pond. The district court properly considered the conflicting evidence and found that the credible evidence established that the parties had an oral contract for the work on the pond. It further found that Tim Ramirez's testimony was "implausible" at best. These findings are also supported by substantial and competent evidence.

---

**2.** At this second hearing the trial court declined to allocate any fees to an award under I.C. § 45– 513. Accordingly, such fees would not be included as a lien against the property.

The Ramirezes further claim that Fairfax failed to obtain a permit for the tank's installation and installed the tank in the wrong location. At trial, Tim Ramirez testified that after the test hole had been dug he told Fairfax not to place the septic tank in that location because it was a potential water source. However, Bill Krik's testimony contradicts Ramirez's testimony. Krik testified that after the tank was set in the ground he went to the Ramirez property to work on a leach field for the septic system. He also stated that he had a discussion with Tim Ramirez at that time, and Ramirez did not express any problems or misgivings about the placement of the tank. Ed Braun, a senior environmental health specialist with the Panhandle Health District, testified that he inspected the hole prior to the installation of the septic system, and later inspected the system itself prior to the time it was buried. He stated that he found the area where the hole was located to be suitable for drainage and did not see any water pouring into the hole. Following his inspection, the only deficiency Braun discovered was the lack of a proper permit for the septic system. Braun stated that Tim Ramirez subsequently picked up a permit form, but never returned or paid for it. Finally, in opposition to his assertion that he was dissatisfied with the tank's installation, Tim Ramirez paid the installation bill submitted by Fairfax in full without requesting any changes. The district court again weighed the conflicting evidence and stated that it was persuaded by the testimony of Krik and Braun. There was substantial, competent evidence to support the court's finding that the septic tank was properly installed in the correct location.

The Ramirezes next argue that the statute of frauds, I.C. § 9–505(1), prevents Fairfax from enforcing the agreement. However, this issue was not raised as an affirmative defense in the pleadings, and we fail to see how the statute could apply to this contract. Moreover, full performance would certainly remove the oral contract from the proscriptions of the statute of frauds, even assuming it were applicable. *See Willis v. Willis,* 33 Idaho 353, 194 P. 470 (1920); *I.B.M. Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507, 511 (Ct.App.1984).

The Ramirezes also assert, for the first time on appeal, that Fairfax's attorney had a conflict of interest which should have prevented him from representing Fairfax in this case. This claim is based upon the fact that Fairfax's attorney had previously helped the Ramirezes file a declaration of homestead on the property at issue. They extrapolate that because the same property is at issue, the attorney violated Idaho Rule of Professional Conduct No. 1.9(a)[3] when he represented Fairfax without obtaining the Ramirezes' consent. An issue not raised below will not be considered when raised for the first time on appeal. *Post Falls Trailer Park v. Fredekind,* 131 Idaho 634, 637, 962 P.2d 1018, 1021 (1998).

Finally, the Ramirezes assert that they were deprived of due process of law because their attorney failed to pursue evidence essential to the merits of the case. Because of this, the Ramirezes claim in their brief that they filed a Rule 60(b) motion for relief from judgment. However, the record on appeal reveals no such motion or ruling thereon by the district court, and we therefore decline to address the issue.

### B. Fairfax's Claim On Cross Appeal

**1. A lien can properly attach to a parcel of land when the work performed was done upon an adjoining easement created for the benefit of the parcel**

Fairfax asserts that the district court erred when it held that a mechanic's and materialman's lien could not be placed on the Ramirez property for work done on the easement road leading to the property. Although

---

**3.** Idaho Rules of Professional Conduct 1.9(a) states:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

We note, however, that these "matters" are not "substantially related."

the district court gave Fairfax a judgment for the amount due on all the work done, it only allowed a mechanic's lien on the small portion due for work done within the physical bounds of the Ramirezes' property.

Whether a mechanic and materialman's lien may properly attach to a parcel of land when the labor or materials were actually supplied for a project physically located, not upon the parcel itself, but upon an adjoining easement benefitting that parcel, is an issue of first impression in Idaho. Authorities are split over the issue of whether work performed off the premises can result in a lien on property. *See* 53 AM. JUR.2d *Mechanics Liens* § 106 (1996) (noting that liens have been allowed for an improvement that, although not located upon it, has a beneficial effect on the parcel). The issue has been addressed in a number of different contexts, including when work was done on an adjacent road. *Ladue Contracting Co. v. Land Development Co.*, 337 S.W.2d 578 (Mo.App. 1960) (allowing mechanic's lien to attach to appurtenant lots for grading of street, circular turn-around, and driveways); *see also Mitford v. Prior*, 353 F.2d 550, 553 (9th Cir.1965) (affirming the district court's determination that 'the modern and growing view of the law is that a mechanic's lien will attach to property for an improvement not placed thereon if it has a physical or beneficial connection therewith and is essential to the convenient and comfortable use of the premises'); *Newell v. Carlow, Newell, & Smith, Inc.*, 403 A.2d 1209 (Me.1979) (allowing lien to attach to company's building, land upon which building was located and attached pipeline for installation of the pipeline within a right-of-way owned by the company).

 Likewise, previous Idaho case law and general principles of interpretation indicate that in Idaho a workman may perfect a lien against property even though the work was actually performed upon an easement adjoining and benefitting that parcel. Idaho's mechanic and materialman's lien statute is remedial in nature. *Baker v. Boren*, 129 Idaho 885, 895, 934 P.2d 951, 961 (Ct.App. 1997). A lien itself is not a penalty, but rather is designed to provide a contractor with security. *Guyman v. Anderson*, 75 Ida-

ho 294, 296, 271 P.2d 1020, 1021 (1954). Accordingly, "[i]n Idaho [mechanic's and] materialman's liens are to be liberally construed so as to effect their objects and to promote justice .... However, it is clear that [mechanic's and] materialman's liens are creatures of statute and statutory requirements must be substantially complied with in order to create a valid lien." *Chief Industries, Inc. v. Schwendiman*, 99 Idaho 682, 685, 587 P.2d 823, 826 (1978).

In *Chamberlain v. City of Lewiston*, 23 Idaho 154, 129 P. 1069 (1912), the Supreme Court was presented with the similar question of whether a lien could attach to a waterworks system when the work done was completed apart from that system. In *Chamberlain*, a contractor and its workmen sought to foreclose on a mechanic's lien against the City of Lewiston's waterworks system. The city had hired a contractor to build an extension to the intake pipe for the system. In order to build this pipe, the contractor found it necessary to first install a coffer-dam in the Clearwater river. Unfortunately, after the dam was built, but before the project was completed, a flood carried the dam and materials away. The project was thereafter abandoned. Not having been paid, the individuals who provided labor and materials for the building of the dam then filed liens against the pumping plant and waterworks system of the city. The district court entered judgments in favor of the workmen and materialmen. On appeal, the city asserted that a lien could only attach to the bed of the stream where the work took place because "no work was actually and literally done upon any of the pipe or machinery or any part of the present water system." *Id.* at 166, 129 P. at 1072. The Supreme Court disagreed.

> This contention overlooks the fact that the contract called for a repair or alteration to the water system and pumping plant, which would attach itself to and become a part of the system.... This would have been a part of the system had it been carried out and completed as the contract called for.

*Id.* Accordingly, the Court held that a lien did attach to the waterworks system in spite

of the fact that the work completed was not done upon the system itself. *Id.* at 167, 129 P. at 1072.

Just as in *Chamberlain,* preparatory work was necessary before Fairfax could complete his septic tank installation for the Ramirezes. Fairfax testified that the tank truck could not traverse the easement road as it originally existed. Accordingly, Fairfax and Tim Ramirez agreed to repair the road, and then complete the septic tank installation. In *Chamberlain,* the Court relied on the fact that the preparatory work would have attached to and become a part of the city's waterworks system. In our case, the work was done on the easement which was an appurtenance to the Ramirezes' parcel of land. The easement road was essential to the beneficial use of the Ramirez property; the work performed was for the purpose of improving and enhancing ease of access to the main parcel. Moreover, the two warranty deeds which transferred property to the Ramirezes each include a description which states that the parcels were granted "SUBJECT TO AND TOGETHER WITH an easement 60 feet in width for ingress, egress, and utilities over and along the presently existing road," and then provides a detailed legal description of the land upon which the road sits. As such, this easement was an integral part of the main parcel and was indisputably connected to it.

Applying the reasoning of *Chamberlain,* although the majority of work done by Fairfax was not located on the actual parcel for which he seeks a lien, it was done upon the easement which was sufficiently attached to the parcel to justify allowing a lien on the parcel itself. *See also Beall Pipe & Tank Corp. v. Tumac Intermountain, Inc.,* 108 Idaho 487, 491, 700 P.2d 109, 114 (Ct.App. 1985) (allowing a lien to attach to property when materials furnished "had been delivered to and had been installed on and *adjacent to* the 840 acre parcel of [owner's] land described in the claim of lien."(emphasis added)). Accordingly, we hold that Fairfax may properly maintain a lien on the Ramirezes'

property for work done on the easement road.

## IV.

### ATTORNEY FEES

**A. The District Court Erred When It Failed To Award Fairfax Attorney Fees Pursuant To I.C. § 45–513**

I.C. § 45–513 provides, "The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees." "[U]pon the successful entry of a judgment of foreclosure of a lien claimed under I.C. § 45–507, an award of attorney fees and costs is mandatory.[4] The *amount* of the award, however, is still a matter of discretion for the district court." *Olsen v. Rowe,* 125 Idaho 686, 689, 873 P.2d 1340, 1343 (Ct.App. 1994). This Court has determined that Fairfax can properly obtain a lien on the property for the *entire* amount due, including the amount owing for work done on the easement road. Accordingly, we hold that Fairfax may also recover, pursuant to I.C. § 45–513, all of his reasonable attorney fees incurred in the district court and attributable to the lien foreclosure.

**B. Fairfax Is Entitled To Recover Attorney Fees For His Defense Of The Ramirezes' Appeal**

On appeal, Fairfax requested attorney fees for both his defense of the Ramirezes' appeal and for the prosecution of his cross-appeal. Likewise, the Ramirezes requested attorney fees in their reply brief. This Court may independently consider the appropriateness of an award of attorney fees in each of the actions before it, i.e. the appeal and the cross-appeal. *See Toews v. Funk,* 129 Idaho 316, 324, 924 P.2d 217, 225 (Ct. App.1994).

Fairfax concedes that I.C. § 45–513 does not apply on appeal, but argues that it does not preclude an award of attorney fees under other statutes. Accordingly, he re-

---

4. Idaho Code § 45–507 describes the proper process for filing and recording a mechanics' and

materialmen's lien.

quests an award of attorney fees pursuant to I.C. § 12–121 for his defense of the Ramirezes' appeal. Fairfax asserts that the appeal did not present a genuine issue of law, and is therefore frivolous, necessitating an award of attorney fees under I.C. § 12–121.

Although attorney fees on appeal are not available pursuant to I.C. § 45–513, an award may be made under I.C. § 12–121 if the appeal was brought frivolously, unreasonably or without foundation. *Beall Pipe*, 108 Idaho at 493, 700 P.2d at 115. An award of attorney fees pursuant to I.C. § 12–121 "is appropriate where an appeal presents no meaningful issue on a question of law but simply invites the appellate court to second-guess the trial judge on conflicting evidence." *Knowlton v. Mudd*, 116 Idaho 262, 265, 775 P.2d 154, 157 (Ct.App.1989). This is just such a case. The Ramirezes failed to present a meaningful question of law and instead merely asked this Court to second-guess the decisions of the trial court. Accordingly, Fairfax is entitled to attorney fees for his defense of the frivolous appeal. *See* I.A.R. 41.

## C. Fairfax Cannot Recover Attorney Fees Pursuant To I.C. § 12–120(3) For His Prosecution Of The Cross–Appeal

As previously stated, the question of whether a lien can be placed upon property for work done upon an adjacent easement and benefiting the property was a question of first impression in Idaho. Accordingly, the cross-appeal presented a meaningful question of law. Although Fairfax was the prevailing party on this issue and in the· cross-appeal, he cannot recover attorney fees pursuant to section 12–120(3).

As conceded by Fairfax, I.C. § 45–513 does not allow the recovery of attorney fees on appeal. *See Hendrix v. Gold Ridge Mines, Inc.*, 56 Idaho 326, 54 P.2d 254 (1936). In *Hendrix* the Supreme Court held that the Idaho legislature had evidenced a legislative intent to limit available attorney fees to those incurred in the district court by adopting the general language of a California lien statute, but deleting that portion of the statute which had specifically authorized attorney fees for action in appellate courts. *Id.* at 337–38, 54

P.2d at 258. Having been prevented from recovery under section 45–513, Fairfax now asserts that he can recover attorney fees on appeal pursuant to I.C. § 12–120(3), a more generalized attorney fee statute. "Where two statutory provisions appear to apply to the grant of attorney fees, the specific controls over the general." *Shay v. Cesler*, 132 Idaho 585, 588, 977 P.2d 199, 202 (1999). In light of the clear legislative intent to restrict the recovery of attorney fees in a lien foreclosure to those incurred in district court, we cannot say that recovery may be had under another, less specific statute. Accordingly, we decline to award Fairfax attorney fees for his prosecution of the cross-appeal.

## D. Fairfax Is Entitled To Recover His Costs In Both The Appeal And The Cross–Appeal

Fairfax requested costs on appeal, as did the Ramirezes. The limitation placed upon the recovery of attorney fees on appeal in a mechanic's lien action has not been extended to costs on appeal. Accordingly, Fairfax is entitled to recover his costs as the prevailing party in both the appeal and the cross-appeal. *See* I.A.R. 40.

## V.

## CONCLUSION

We affirm the district court's factual findings. However, we reverse the district court's ruling that Fairfax did not have a lien on the Ramirez property for the amount attributable to the work done on the easement road, together with accompanying attorney fees, pursuant to I.C. § 45–513. Accordingly, we remand the case to the district court for further proceedings consistent with I.C. § 45–505 and this opinion.

Judge LANSING and Judge Pro Tem HARDING, concur.