928 P.2d 898

**NORTHWEST PIPELINE COR-
PORATION, Appellant–Ap-
pellant on Appeal,**

v.

**STATE of Idaho, DEPARTMENT OF
EMPLOYMENT, Respondent–
Respondent on Appeal.**

No. 21677.

Supreme Court of Idaho,
Boise, September 1996 Term.

Dec. 13, 1996.

Hawley Troxell Ennis & Hawley, Pocatello, for appellant–appellant on appeal. Ronald E. Bush, argued.

Alan G. Lance, Attorney General; Carolyn Lynn Brassey and Paul F. Kime, argued, Deputy Attorneys General, Boise, for respondent–respondent on appeal.

TROUT, Justice.

This appeal arises from an order of the Idaho Industrial Commission (Commission) holding Northwest Pipeline Corporation (Northwest) liable for the unpaid unemployment security taxes of one of its contractors, Great Plains Pipeline Construction Company (Great Plains). We reverse.

I.

BACKGROUND

Northwest, a natural gas transmission company, owns and operates natural gas pipeline transmission facilities in southern Idaho. In 1992, Northwest began a substantial pipeline expansion project in Idaho and hired Great Plains as the general contractor. Under its contract with Great Plains, Northwest made payments every two weeks to the contractor based upon progress made on the project. By agreement, Northwest retained ten percent of each progress payment to be

paid upon completion or termination of the contract. In the event of the contract's termination, Northwest could hire another contractor to complete the project and deduct any associated costs from the retainage. Should this occur, the contract provided that Northwest would then remand any remaining balance to Great Plains. The contract also provided Northwest the option of requiring Great Plains to furnish a performance or completion bond to secure the contractor's satisfactory resolution of all liabilities. Finally, the parties agreed that Northwest could terminate the contract should Great Plains abandon the project. In the event of termination for default, Northwest would not be obligated to make any further payments to Great Plains until after the work was completed.

On May 1, 1993, Great Plains abandoned the project, leaving approximately ten percent of the work unfinished. Northwest had made a scheduled progress payment on April 16, 1993. Some time earlier, in April, Great Plains had filed a first quarter 1993 employer tax report with the Department of Employment (Department) but did not include a payment of taxes with that report. The Department notified Northwest of Great Plains' nonpayment in late April and, on May 3, served a garnishment on Northwest directing Northwest to make sworn answers to interrogatories. In its answers, Northwest averred that it did not owe Great Plains any money. On May 18, the Department notified Northwest that it was liable for payment of Great Plains' unemployment taxes in the amount of $140,114.65 under Idaho Code § 72–1355A.

## II.

### PROCEDURAL HISTORY

Northwest protested the Department's finding of liability, and a hearing was held on July 13, 1993, after which the decision of the Department was affirmed. On July 29, 1993, Northwest requested a rehearing on the matter, and a new hearing was held on November 4, 1993. The Department's decision was again affirmed, and Northwest then appealed to the Industrial Commission. The Commis-

sion affirmed the decision of the Department, and this appeal ensued.

## III.

### DISCUSSION

#### A. "Final payment" under Idaho Code § 72–1355A

██ The Department seeks to impose upon Northwest liability for Great Plains' unpaid unemployment taxes pursuant to I.C. § 72–1355A, which provides:

No covered employer which contracts with any contractor or subcontractor who is a covered employer ... shall make *final payment* to such contractor or subcontractor for any indebtedness due, until after the contractor or subcontractor has paid or has furnished a good and sufficient bond acceptable to the director for payment of contributions due, or to become due, in respect to personal services which have been performed by individuals for such contractor or subcontractor. Failure to comply with the provisions of this section shall render said covered employer directly liable for such contributions....

(emphasis added). Northwest concedes that both it and Great Plains are "covered employers" for purposes of this statute. Under the statute, however, Northwest is not liable for Great Plains' unemployment tax contributions until Northwest has made "final payment" to the contractor. At issue is whether Northwest's regularly scheduled progress payment of April 16 constitutes "final payment" under the statute.

We have interpreted the "final payment" language of § 72–1355A in only one case, *Department of Employment v. Diamond International Corp.,* 96 Idaho 386, 529 P.2d 782 (1974), which involved nearly identical facts. In that case, Diamond International Corp. (Diamond) hired a contractor to build a timber access road. The contract provided for regular progress payments, with Diamond retaining ten percent of each payment until completion of the project. When the contractor abandoned the project before completion, the Department attempted to collect from Diamond the contractor's unpaid unem-

ployment tax contributions under § 72–1355A. The Department argued that each progress payment made under the contract constituted "final payment" under § 72–1355A because each payment was "final" for the portion of work already performed. This Court, concluding that the statutory language was ambiguous, gave the phrase its usual and ordinary meaning and held that "final payment" in § 72–1355A meant the "final payment contemplated under the contract at the time of its completion or termination." *Diamond International,* 96 Idaho at 387, 529 P.2d at 783. Given the facts, *Diamond International* is indistinguishable from the present case and controls this issue.

Accordingly, we must determine whether Northwest's April 16 payment amounted to the "final payment contemplated under the contract at the time of its completion or termination." The Department does not argue here that each progress payment made under the contract constituted a final payment. Instead, the Department points to the terms of the contract between Northwest and Great Plains, in which Northwest reserved the right to terminate the contract in the event of Great Plains' abandonment of the project. The Department notes that Northwest did in fact exercise this right following Great Plains' abandonment of the project and then denied owing any further payments to Great Plains in its answers to the Department's interrogatories. Thus, the Department maintains that the last payment made prior to the contract's termination, the April 16 payment, constitutes "final payment" under § 72–1355A.

The Department's interpretation of the statute, however, would lead to the same ills we sought to avoid in *Diamond International.* This Court noted that to adopt the Department's interpretation of "final payment" in that case would mean that *any* payment made by a covered employer to a contractor would trigger liability under the statute. *Id.,* 529 P.2d at 783. In such a situation, the covered employer, to protect itself, would be forced to secure a suitable bond before each and every payment was made. Likewise, to construe "final payment" under § 72–1355A to include any payment made just prior to a

contractor's breach would require the covered employer to assume that each payment will be its last under the contract due to the possibility, however remote, that the contractor will subsequently default or that the contract will terminate for some other reason.

To determine what constitutes the "final payment contemplated under the contract at the time of its completion or termination," we must examine what the parties at the time of contracting contemplated would be the final payment when the contractor either completed the project or terminated further work. Here the parties' contract provides that the final payment would be the one made after the work was completed and all adjustments were made from the retainage. It was not contemplated that a regular periodic progress payment would be a final payment under the contract. Given this interpretation, it is clear that Northwest's April 16 progress payment does not constitute "final payment" for purposes of liability under § 72–1355A. It was not until May 1, nearly two weeks later, that Northwest discovered that Great Plains had ceased working on the project. Only then did it become apparent to Northwest that the April 16 payment would be its last.

## B. Equal protection

Alternatively, Northwest challenges the Department's decision on equal protection grounds, arguing that I.C. § 72–1355A singles out owners and principals of construction projects for direct liability for the payment of unemployment taxes owed for employees of their contractors. Based upon our holding that Northwest's April 16 payment does not trigger liability under § 72–1355A, we find it unnecessary to address this issue.

## C. Attorney's fees

■ Finally, Northwest seeks attorney's fees pursuant to I.C. §§ 12–117 and 12–121. Idaho Code § 12–121 provides that we may award attorney's fees to the prevailing party "in any civil action," and I.R.C.P. 3(a) defines a civil action as one "commenced by the filing of a complaint with the court." The instant action, however, was not "commenced" by

the filing of a "complaint." Instead, Northwest appealed an administrative ruling by the Industrial Commission. Appeals from administrative rulings are not "civil actions" for purposes of I.C. § 12–121. *Lowery v. Board of County Comm'rs for Ada County*, 117 Idaho 1079, 1082, 793 P.2d 1251, 1254 (1990). *See also Johnson v. Idaho Cent. Credit Union*, 127 Idaho 867, 871, 908 P.2d 560, 564 (1995) (claim for unemployment benefits appealed to Industrial Commission and subsequently to Supreme Court is not "civil action" for purposes of I.C. § 12–121). Northwest is not entitled to an award of attorney's fees under this statute.

 Idaho Code § 12–117 provides that the court shall award reasonable attorney's fees to the prevailing party in any administrative or civil judicial proceeding if the court finds that the opposing state agency acted without a reasonable basis in fact or law. In this case, however, the Department acted with a reasonable basis in fact and law. It applied our holding in *Diamond International* to the present case and determined that Northwest's April 16 payment constituted the "final payment as contemplated under the contract at the time of its completion or termination." Although we have held that Northwest's April 16 payment is not "final payment" under I.C. § 72–1355A, it would go too far to rule that the Department acted without a reasonable basis in law or fact. The Department could have reasonably concluded that our definition of "final payment" in *Diamond International* included a payment that became "final" retroactively when one party breached the contract and triggered the termination of the contract. Thus, Northwest is not entitled to an award of attorney's fees under I.C. § 12–117.

### IV.

### CONCLUSION

We hold that Northwest's periodic progress payment of April 16 was not a "final payment" within the meaning of § 72–1355A, and thus we reverse the determination of the Industrial Commission that Northwest is liable for unemployment tax contributions not paid by Great Plains. We award costs on appeal, but not attorney fees, to Northwest.

McDEVITT, C.J., JOHNSON and SCHROEDER, JJ., and SWANSTROM, J. Pro Tem., concur.