118 P.3d 141

David MOORE and Mednat, Inc., an Idaho corporation and successor in interest to Tandem Health Group, Inc., Petitioners–Appellants,

v.

OMNICARE, INC., Respondent.

Omnicare, Inc., Petitioner–Respondent,

v.

David Moore and Mednat, Inc., an Idaho corporation and successor in interest to Tandem Health Group, Inc., Respondents–Appellants.

Nos. 30244, 30245.

Supreme Court of Idaho, Boise, January 2005 Term.

July 22, 2005.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellants. Gary I. Grenley argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, and Thompson Hine, LLP, Cincinnati, Ohio, for respondent. Deborah S. Brenneman argued.

SCHROEDER, Chief Justice.

This is an appeal from a Judgment of the district court vacating in part and confirming in part an arbitration panel's award on claims arising out of an Asset Purchase Agreement and Employment Agreement between David Moore (Moore) and Mednat, Inc. (Mednat) and Omnicare, Inc. (Omnicare). Both parties appealed the Judgment and ask for attorney fees on appeal.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

David Moore (Moore) and James Tanzini (Tanzini) were shareholders of a pharmaceutical and health care equipment supply company, Tandem, Inc. (Tandem). In July of 1997 Omnicare, Inc. (Omnicare) wanted to acquire Tandem to expand its own pharmaceutical and health care supply business. Through its wholly owned subsidiary, THG Acquisition Corporation (THG), Omnicare entered into an agreement (the Asset Purchase Agreement) to acquire the assets and goodwill of Tandem, now known as Mednat, Inc. (Mednat), for $1.4 million. Section 2.1 of the Asset Purchase Agreement contained an Earnings Holdback provision whereby the parties agreed:

> If and only if the Operating Profit Margin Percent (as defined below) of the Business being acquired by Purchaser [Omnicare] for the consecutive twelve (12) calendar months commencing October 1, 1997 is equal to or greater than the operating profit of the Seller for the four-month period ended April 30, 1997, Purchaser shall pay to Seller $400,000 (the 'Earnings Holdback') or such lesser amount as is determined in accordance with Sections 2.2 and 7.4 hereof . . .

Omnicare also agreed to hire Moore as Mednat's Chief Operating Officer (COO). In a separate employment agreement (the Employment Agreement) Omnicare agreed to pay Moore a base compensation of $110, 000 per year for five years.

Section 10.8 of the Asset Purchase Agreement stated that the agreement would be "governed by and construed and enforced in accordance with, the laws of the State of Idaho." Section 10.9 set forth the terms and conditions of dispute resolution under the agreement:

> (a) Any controversy, dispute or claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement, including, without limitation, any claim based on contract, tort or statute and any claim pursuant to the provisions of Article 2 or 7 hereof, *shall* be settled by arbitration. Any arbitration pursuant to this Agreement shall be conducted in at the site in Boise, Idaho designated by the moving party before and in accordance with the then existing Rules for Commercial Arbitration of the American Arbitration Association.... In any matters submitted to arbitration hereunder, the arbitrators may not through their award compromise any difference between the positions of Omnicare and Seller. Instead, three days before any arbitration is scheduled to commence, Omnicare and Seller shall each submit to the arbitration panel a proposed award. The arbitrators *shall* endorse as their final award either the award proposed by Omnicare or the award proposed by Seller. No other award may be made. Fees and expenses of the arbitration shall be paid by the parties against whom the arbitrator rules....

(b) The parties intend that the agreement to arbitrate as set forth in this Section 10.9 shall be valid, enforceable and irrevocable. Each party in any arbitration proceeding commenced hereunder shall bear such party's own costs and expenses (including expert witness and attorneys' fees) of investigating, preparing and pursuing such arbitration claim. The parties to any arbitration shall have the right to discover the relevant books and records of the other side that are not confidential or privileged.

(c) In any dispute as to the determination of the Adjustment Amount or related matters in connection with Sections 2.1 and 2.2 hereof, such arbitrator shall be limited in his or her award to determining that the amount due pursuant to Sections 2.1 and 2.2 hereof, and such arbitrator shall not seek to compromise any difference between such statement, notice or objection as to such amount.

The Employment Agreement was governed by similar provisions. Sections 2.2 through 2.4 outlined the reasons for and methods by which Moore could be terminated. Section 2.2 described "termination for cause." After outlining the various circumstances constituting a for cause discharge, the agreement required Omnicare to provide:

[W]ritten notice from the board of directors of the Company or Omnicare stating the nature of the conduct forming the basis for termination and affording Employee ten (10) days to correct the act or omission described. Unless Employee cures such act or omission to the satisfaction of the Company and Omnicare such Termination for Cause shall be effective immediately upon the expiration of said ten (10) day period. Upon the effectiveness of any Termination for Cause by the Company, payment of all compensation to Employee under this Agreement shall cease immediately (except for any payment of compensation accrued but unpaid through the date of such Termination for Cause).

Section 2.3 described termination "without cause". This section provided that:

The Company shall have the right to terminate this Agreement and Employee's employment without cause upon ten (10) days' written notice to Employee. If the Company terminates this Agreement and Employee's employment without cause pursuant to this Section 2.3, Employee shall receive his Base Compensation, as that term is defined in Section 3.1 of this Agreement, for the remainder of the then current term of this Agreement. Upon such termination, Employee shall not receive any further compensation pursuant to Sections 3.2, 3.3 or 3.4 of this Agreement. In the event of termination without cause, Employee acknowledges that the Company shall have no liability to him whatsoever other than its obligation to pay him his Base Compensation for the remainder of the then current term of this Agreement.

Section 7.9(a) of the Employment Agreement provided that any claims would be settled by arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association as set forth in the Asset Purchase Agreement." The Employment Agreement was to be governed by Idaho contract law.

After three years Mednat's client base began to steadily decline. On June 29, 2000, representatives from Omnicare informed Moore they were closing Mednat and terminating his employment. They did not give Moore written notice. Moore filed a petition with the American Arbitration Association (AAA) alleging improper termination under the terms of his Employment Agreement. Omnicare counterclaimed for indemnification, damages resulting from Medicare payments made on Moore's behalf, and for breach of contract in Moore's alleged failure to use "best efforts" in his duties relating to Mednat.

In October of 2001 Moore amended his claim, adding Mednat as a party and including a new claim for damages under the "Earnings Holdback" provision of the Asset Purchase Agreement. The assigned single arbitrator was replaced by a three-person panel of arbitrators. The panel granted Moore summary judgment on the Employ-

ment Agreement issue. The panel awarded Moore $247,500 in damages on this claim.

The arbitrators heard the remaining Earnings Holdback, indemnification, Medicare, and breach of contract claims on October 15, 16 and 17, 2002 in Boise. Both parties submitted their requested claims for relief under a "baseball arbitration" format as stated in § 10.9(a) of the Asset Purchase Agreement, that is, the arbitrators were to accept one proposal or the other. In addition to their damage request, Moore and Mednat submitted a request for costs and attorney fees on the Employment Agreement and Earnings Holdback claims. Moore also asked that damages under the Employment Agreement claim be trebled pursuant to I.C. § 45–615.

On January 23, 2003, after the close of hearing and filing of post-hearing briefs, the panel made a second Interim Award, awarding Moore prejudgment interest on the $247,500 in damages under the Employment Agreement. They denied Moore's request for attorney fees and treble damages on the basis that such an award was outside the scope of their authority. They awarded Mednat $400,000 in damages on the Earnings Holdback claim. The arbitrators acknowledged that the proposed award included a request for prejudgment interest, costs and attorney fees. They ordered Mednat to provide a calculation of prejudgment interest and an affidavit of fees and costs. Omnicare objected.

On April 3, 2003, the panel made its Final Award. The panel denied Omnicare's request for a further hearing on Moore and Mednat's Statement of Attorney's Fees and Costs. The panel awarded prejudgment interest in the amount of $205, 282, costs of $26,688 and attorney fees of $130,000 in connection with the Earnings Holdback claim. Additionally, the panel confirmed its January 23, 2003 Interim Award of prejudgment interest to Moore on the Employment Agreement claim. The panel once again denied Moore's request for treble damages and attorney fees on the Employment Agreement claim.

Omnicare paid the full amount of the Employment Agreement claim award, including prejudgment interest, and the $400,000 principal due on the Earnings Holdback claim. Moore filed a Petition for an Order Confirming and Modifying the arbitration award in district court, alleging that the arbitration panel had improperly failed to award treble damages, costs and attorney fees as mandated by Idaho Code §§ 45–615(2), 12–120(3) and 12–121 on the Employment Agreement claim. Omnicare filed a Petition to Vacate and Confirm the Mednat Arbitration Award on the basis the panel had exceeded its scope of authority in awarding prejudgment interest, costs and attorney fees on the Earnings Holdback claim. The parties stipulated to consolidate these petitions.

The district court granted Omnicare's petition to vacate the panel's award of attorney fees related to the Earnings Holdback claim, finding the award exceeded the scope of the panel's authority. The district court denied all of the claims in Moore's petition. A judgment was entered on October 20, 2003 reflecting this ruling. Both parties appealed. These appeals were consolidated by this Court.

The issues on appeal include whether the Idaho UAA or FAA governs the parties' contract in arbitration and whether the arbitrators exceeded their authority in any part of the award or denial of requested relief by the parties. Both parties seek attorney fees on appeal.

## II.

### STANDARD OF REVIEW

 When reviewing a district court's decision to vacate or modify an award of an arbitration panel this Court employs virtually the same standard of review as that of the district court when ruling on the petition. *Bingham County Comm'n v. Interstate Elec. Corp.*, 105 Idaho 36, 42, 665 P.2d 1046, 1052 (1983). Review of an arbitrator's award is limited to whether any of the grounds for relief stated in the Idaho Uniform Arbitration Act (UAA) exist. Idaho Code § 7–912(2004); *Pac. Alaska Seafoods, Inc. v. Vic Hoskins Trucking, Inc.*, 139 Idaho 472, 474, 80 P.3d 1073, 1075 (2003); *Landmark v. Mader Agency, Inc.*, 126 Idaho 74, 76, 878

P.2d 773, 775 (1994); *Bingham County Comm'n,* 105 Idaho at 42–43, 665 P.2d at 1052–53. Under the UAA, a district court may vacate an arbitrator's award only where:

> (1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator; (3) the arbitrators exceeded their powers; (4) the arbitrators refused to postpone the hearing to the prejudice of a party; or (5) there was no arbitration agreement and the party did not participate in the hearing without objecting.

I.C. § 7–912(a)(1)–(5); *Driver v. SI Corp.,* 139 Idaho 423, 426, 80 P.3d 1024, 1027 (2003). An arbitrator's rulings on questions of law and fact are binding, even where erroneous, unless one of the enumerated statutory grounds is present. *Pac. Alaska Seafoods, Inc.,* 139 Idaho at 474, 80 P.3d at 1075; *Reece v. U.S. Bancorp Piper Jaffray, Inc.,* 139 Idaho 487, 490, 80 P.3d 1088, 1091 (2003); *Chicoine v. Bignall,* 127 Idaho 225, 227, 899 P.2d 438, 440 (1995); *Bingham County Comm'n,* 105 Idaho at 41–42, 665 P.2d at 1051–52; *Hecla Mining Co. v. Bunker Hill Co.,* 101 Idaho 557, 562, 617 P.2d 861, 866 (1980). If a district court makes additional findings of fact the proper standard of review as to the findings is substantial and competent evidence. *Reece,* 139 Idaho at 490, 80 P.3d at 1091. This Court has also recognized two additional standards of review of an arbitrator's award in the context of application of the Federal Arbitration Act (FAA) but concludes the FAA does not apply to this case.

### III.

### THE UAA IS THE GOVERNING LAW

■ Traditionally, the FAA applies in all cases involving arbitration in which the underlying transaction affects interstate commerce. 9 U.S.C. § 2 (2003); *Allied–Bruce Terminix Co., Inc. v. Dobson,* 513 U.S. 265, 274–75, 115 S.Ct. 834, 839–40, 130 L.Ed.2d 753, 764–65 (1995). However, where parties have expressly agreed that Idaho law will govern arbitration the Idaho UAA, not the FAA, applies as the substantive law in arbitration. *See Reece v. U.S. Bancorp Piper Jaffray, Inc.,* 139 Idaho 487, 490–91, 80 P.3d 1088, 1091–92 (2003)(quoting *Volt Info. Sci.,*

*Inc. v. Bd. of Tr.,* 489 U.S. 468, 470, 109 S.Ct. 1248, 1251, 103 L.Ed.2d 488, 494 (1989)(application of California law was not preempted by the FAA where the parties agreed arbitration would be governed by California state law)). *Reece* distinguished the U.S. Supreme Court case of *Volt* which found that California law and not the FAA applied as the substantive law in an arbitration, proceeding. *Id.* at 490–91, 80 P.3d at 1091–92. According to *Reece,* "[t]he narrow reach of *Volt* does not apply to this case because there is no evidence that the Appellant and Respondents agreed to use Idaho law to govern their arbitration." *Id.* This policy is consistent with the U.S. Supreme Court's holding that the FAA's "proarbitration policy does not operate without regard to wishes of contracting parties" *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57–58, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76, 84–85 (1995) (citations omitted) and that " 'just as [parties] may limit by contract issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.' " *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Tr.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488, 500 (1989)).

■ Moore and Omnicare expressly contracted that Idaho law would govern the Asset Purchase Agreement. Section 10.8 of the Asset Purchase Agreement stated that it "shall be *governed by and construed and enforced in accordance with, the laws of the State of Idaho.*" Section 10.9(a) also provided that any controversy arising under the Asset Purchase Agreement "shall" be submitted to arbitration. The parties expressly contracted for dispute resolution by arbitration and for application of Idaho law. The Idaho UAA applies to the Asset Purchase Agreement.

■ Likewise, the Idaho UAA governs the Employment Agreement. Moore argues that Idaho Code § 7–901 prevents application of the Idaho UAA to contracts between employers and employees. However, this interpretation of I.C. § 7–901 ignores a clear exception where the parties have agreed Ida-

ho law will govern their employment agreement. I.C. § 7–901 states:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This act does not apply to arbitration agreements between employers and employees or between their respective representatives (*unless otherwise provided in the agreement*).

I.C. § 7–901(2004)(emphasis added). Section 7.5 of the Employment Agreement states that the agreement "shall be construed in accordance with and governed for all purposes by the laws of the State of Idaho applicable to contracts executed and wholly-performed within such State." Thus, the parties agreed Idaho law would govern the Employment Agreement and the UAA applies to the parties' Employment Agreement.

## IV.

## THE DISTRICT COURT PROPERLY VACATED THE ARBITRATION PANEL'S AWARD OF ATTORNEY'S FEES ON THE EARNINGS HOLDBACK CLAIM

Mednat argues that the district court improperly vacated the arbitration panel's award of attorney fees on the Earnings Holdback claim for several reasons. First, § 10.9(a) of the Asset Purchase Agreement contained a "baseball arbitration" provision requiring the panel to choose one or the other of the parties' requests for relief when making the award. Second, the FAA preempts application of I.C. § 7–910, permitting the panel to make an award of attorney fees on the Earnings Holdback claim. Third, Mednat argues that Idaho law authorizes an award of attorney fees where there is a statutory basis for the award. *Barnes v. Hinton*, 103 Idaho 619, 651 P.2d 553, (1982). Idaho Code § 12–120(3) allows the prevailing party in a suit involving a commercial transaction to recover attorney fees. I.C. § 12–120(3)(2004). Additionally, §§ 10.9(a) and 10.9(b) of the Asset Purchase Agreement

conflict, and this Court should construe the conflicting provisions against Omnicare as the drafter of the agreement. Finally, Mednat argues that § 10.9(c) of the Asset Purchase Agreement is not, as Omnicare suggests, a provision prohibiting an award of attorney fees. Mednat asserts that as long as an arbitrator's award has some rational basis under the parties' agreement a court should uphold the award. *W. Constr., Inc. v. Oregon Southern Idaho & Wyoming Dist. of Laborers*, 101 Idaho 145, 148, 609 P.2d 1136, 1139 (1980).

 This Court concludes that the district court properly vacated the arbitration panel's award of attorney fees on the basis the award exceeded the arbitration panel's scope of authority. I.C. § 7–912(a)(3)(2004); *see also Bingham County Comm'n*, 105 Idaho at 42, 665 P.2d at 1052. An arbitrator's powers stem from the parties' agreement. *Hecla Mining Co.*, 101 Idaho at 565, 617 P.2d at 868 (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960); *Swift Indus. Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1131 (3d Cir.1972); *Lundgren v. Freeman*, 307 F.2d 104, 109–10 (9th Cir.1962); *H.S. Cramer & Co. v. Washburn–Wilson Seed Co.*, 68 Idaho 416, 420–21, 195 P.2d 346, 349 (1948); *W. Const., Inc.*, 101 Idaho at 148, 609 P.2d at 1139). Matters submitted for arbitration are relevant to determining the scope of an arbitrator's power and must be considered along with the original agreement to arbitrate. *Id.* Absent express limitation by the parties, the arbitrator's authority is very broad. *Id.* Section 10.9(b) of the Asset Purchase Agreement required that the parties bear their own costs and fees of arbitration, including *specifically* attorney fees. The panel's award of attorney fees on the Earnings Holdback claim contravened this express language and was therefore beyond the scope of the arbitrator's authority.

 Likewise, the award of attorney fees exceeded the arbitration panel's grant of authority under Idaho Code § 7–910. I.C. § 7–910 states that unless the parties have otherwise agreed, the arbitrators' expenses and

fees, not including attorney fees, shall be paid as provided in the award. I.C. § 7–910(2004). It is beyond the scope of an arbitrator's authority to award attorney fees unless there is a contractual agreement for such an award. I.C. § 7–910; *Emery v. United Pac. Ins. Co.*, 120 Idaho 244, 246, 815 P.2d 442, 444 (1991); *Bingham County Comm'n*, 105 Idaho at 42, 665 P.2d at 1052; *Storrer v. Kier Constr. Corp.*, 129 Idaho 745, 746, 932 P.2d 373, 374 (Ct.App.1997). The panel's award of attorney fees on the Earnings Holdback claim contravened the express language of § 10.9(b) of the Asset Purchase Agreement prohibiting an award of attorney fees in arbitration.

Mednat argues that neither the panel nor the district court relied on I.C. § 7–910, so application of this statute is not properly an issue on appeal. However, the district court held "an award of attorney fees was not within the panel's power to award absent a contractual provision" and that "there was a contractual provision and it provided just the opposite." The district court further cited to *Bingham County Comm'n* in which this Court relied on language similar to that articulated in I.C. § 7–910. "To properly raise an issue on appeal there must either be an adverse ruling by the court below or *the issue must have been raised in the court below, . . .*" *McPheters v. Maile*, 138 Idaho 391, 397, 64 P.3d 317, 323 (2003)(emphasis added) (citation omitted). The district court sufficiently referenced the key language of I.C. § 7–910 and its supporting case law to make application of the statute an issue properly before this Court on appeal.

■ Mednat also argues that the FAA should trump application of I.C. § 7–910 because the statute seeks to limit an arbitrator's authority to award attorney fees. The U.S. Supreme Court has held that where a state law limits an arbitrator's authority, such laws are trumped by application of the FAA. *Mastrobuono*, 514 U.S. at 56, 115 S.Ct. at 1215, 131 L.Ed.2d at 83. However, the FAA is not intended to prevent enforcement of agreements to arbitrate under terms different than those specified in the FAA. *Id.* at 58, 115 S.Ct. at 1216, 131 L.Ed.2d at 84. *Mastrobuono* recognized that "it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Id.* (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 479, 109 S.Ct. at 1256, 103 L.Ed.2d at 500). Were it applicable, the FAA requires enforcement of the parties' contract terms. The parties expressly agreed that attorney fees would not be awarded.

Mednat also argues the arbitration panel had authority to award attorney fees pursuant to AAA rules incorporated into the Asset Purchase Agreement and Idaho statutory law. Section 10.9(a) of the Asset Purchase Agreement stated that, "[a]ny arbitration pursuant to this Agreement shall be conducted . . . *in accordance with the then existing Rules for Commercial Arbitration of the American Arbitration Association . . .*" AAA Rule 43 allows an arbitrator to award attorney fees where the parties have either (1) requested such an award or (2) the award is authorized by law or agreement. AAA Rule 43(c),(d)(2004). Idaho Code § 12–120(3) mandates an award of attorney fees to the prevailing party in a suit involving a commercial transaction. I.C. § 12–120(3)(2004). Additionally, Idaho Code § 12–121 allows for a reasonable award of attorney fees where the court is left with an abiding belief that an action is brought, pursued or defended frivolously, unreasonably or without foundation. I.C. § 12–121(2004).

■ Contrary to Mednat's position, the Asset Purchase Agreement clearly states that AAA rules govern procedural rather than substantive issues. Idaho law, which includes the UAA, applied to interpretation of the parties' contract terms under § 10.7 of the agreement. Thus, application of AAA Rule 43 to this case is inappropriate. Even were this Court to apply AAA Rules to the substantive issues, AAA Rule 2 requires arbitrators to enforce the parties' agreed contract terms. *See* AAA Rule 2 (2004). As recognized by the Court of Appeals, a general entitlement to an award of attorney's fees under I.C. § 12–120 will not override a valid

agreement between parties which limits the dollar amount that may be claimed or awarded. *Chittenden & Eastman Co. v. Leasure,* 116 Idaho 981, 982, 783 P.2d 320, 321 (Ct. App.1989). In this case the parties contracted for a zero dollar amount or claim with respect to an award of attorney's fees.

■ Finally, Mednat has argued that the parties' agreed baseball arbitration provision required the panel to accept Mednat's proposed relief, including its request for attorney fees on the Earnings Holdback claim. Although § 10.9(a) required the arbitrators to choose one or the other of the proposed forms of relief, the arbitrators also had the inherent power to strike portions of the proposed awards which were impermissible under the parties' contract. This power is evidenced in the panel's striking of Moore's request for attorney fees and treble damages in the Final Award on the Employment Agreement claim. The panel should have similarly struck Mednat's request for attorney fees on the Earnings Holdback claim as this relief clearly contradicted §§ 10.9(a) and (b) of the Asset Purchase Agreement. Mednat cannot use the parties' baseball arbitration provision as a means to circumvent the contract terms. The district court properly vacated the panel's award of attorney fees on the Earnings Holdback claim.

## V.

## THE PANEL PROPERLY AWARDED PREJUDGMENT INTEREST BUT NOT COSTS ON THE EARNINGS HOLDBACK CLAIM

An arbitrator's powers stem from the parties' agreement. *Hecla Mining Co.,* 101 Idaho at 564, 617 P.2d at 868 (1980)(citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960); *Swift Indus. Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir.1972); *Lundgren v. Freeman,* 307 F.2d 104, 109–10 (9th Cir.1962); *H.S. Cramer & Co. v. Washburn–Wilson Seed Co.,* 68 Idaho 416, 420–21, 195 P.2d 346, 349 (1948); *W. Constr., Inc. v. Oregon–Southern Idaho & Wyoming Dist. Council of Laborers and Laborers Local Union 267,* 101

Idaho 145, 148, 609 P.2d 1136, 1139 (1980)). Matters submitted for arbitration are relevant to determining the scope of an arbitrator's power and must be considered along with the original agreement to arbitrate. *Id.* Absent express limitation by the parties, the arbitrator's authority is very broad. *Id.* Section 10.9(b) of the Asset Purchase Agreement required the parties to bear their own fees and costs of arbitration. The panel's decision to award costs directly contradicts this express language and was beyond the scope of the arbitrator's authority under I.C. § 7–912(a)(3). The district court erred in affirming the panel's award of costs on the Earnings Holdback claim.

■ Concerning the panel's award of prejudgment interest, an arbitrator exceeds his or her authority and jurisdiction where he or she awards prejudgment interest contrary to the parties' express agreement. *Schilling v. Allstate Ins., Co.,* 132 Idaho 927, 929, 980 P.2d 1014, 1017 (1999). Sections 10.9(a) and (b) of the Asset Purchase Agreement did not preclude the arbitration panel from making an award of prejudgment interest on any claim arising out of the contract. Omnicare's sole argument with respect to the award of prejudgment interest relies on § 10.9(c) of the Asset Purchase Agreement.

■ Section 10.9(c) stated that the arbitration panel may award only the "amount due" as calculated by the arbitrator in any dispute involving the Earnings Holdback provision. Unlike § 10.9(b), which specifically prohibited an award of costs and/or attorney fees, § 10.9(c) did not preclude the panel from making an award of prejudgment interest. If the panel determined that the "amount due" to Mednat on the Earnings Holdback claim included any interest owing on the claim, this interpretation would be consistent with the express language of § 10.9(c). Schilling holds that an arbitrator's authority is to be broadly interpreted. An arbitrator's award may not be set aside for mere error in the law or fact. *Pac. Alaska Seafoods, Inc.,* 139 Idaho at 474, 80 P.3d at 1075; *Reece,* 139 Idaho at 490, 80 P.3d at 1091; *Chicoine,* 127 Idaho at 227, 899 P.2d at 440; *Bingham County Comm'n,* 105 Idaho at 41–42, 665 P.2d at 1051–52; *Hecla Mining*

*Co.*, 101 Idaho at 562, 617 P.2d at 866. It is a reasonable conclusion that the arbitration panel had the authority to award prejudgment interest on the Earnings Holdback claim.

## VI.

## THE DISTRICT COURT PROPERLY AFFIRMED THE ARBITRATION PANEL'S REFUSAL TO AWARD TREBLE DAMAGES AND ATTORNEY FEES ON MOORE'S EMPLOYMENT AGREEMENT CLAIM

■ Moore argues that I.C. § 45–615 requires the trebling of any wage claim where there is a violation of the Idaho Wage and Hour laws. Idaho Code § 45–601(6) defines a "wage claim" as an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, penalties, or damages provided by law to an employee for a claim of unpaid wages. I.C. § 45–601(7)(2004). The definition of "wage" includes any ascertainable unpaid commissions and bargained-for compensation. *Polk v. Larrabee*, 135 Idaho 303, 309, 17 P.3d 247, 253 (2000); *Neal v. Idaho Forest Indus., Inc.*, 107 Idaho 681, 683, 691 P.2d 1296, 1298 (Ct.App.1984).

Moore argues the panel improperly relied on I.C. § 7–910 to deny an award of attorney fees on his wage claim. Further, Moore argues the award should be modified pursuant to Idaho Code § 7–913 to treble the award. Upon application made within 90 days a court shall modify or correct an arbitrator's award where there is an evident miscalculation of figures or a mistake in the description of any person, thing, or property referred to in the award. I.C. § 7–913(2004); *Schilling*, 132 Idaho at 932, 980 P.2d at 1019 (arbitrator's failure to award prejudgment interest where mandated by statute constituted a gross miscalculation). According to Moore the panel failed to award treble damages pursuant to I.C. § 45–615, constituting a miscalculation of the award.

■ The Idaho UAA and not the FAA applies to the parties' Employment Agreement. Moore has argued that the panel's denial of treble damages constituted a manifest disregard of the law. Manifest disregard of the law requires that (1) the arbitrators knew of the governing legal principle and refused to apply it or ignored it altogether, and (2) the governing law was well defined, explicit, and clearly applicable. *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997), *cert. denied*, 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998). However, in Idaho the "manifest disregard" standard of review has been applied only to arbitrations governed by the FAA. *See e.g. Hecla Mining Co.*, 101 Idaho at 565, 617 P.2d at 869; *W. Constr., Inc.*, 101 Idaho at 147–48, 609 P.2d at 1138–39. Because the FAA does not apply to this case this Court does not need to consider the "manifest disregard" standard of review of the panel's decision to deny a request for treble damages. Regardless, the arbitration panel properly determined the trebling issue. I.C. § 45–615 mandates an award of treble damages where an employer fails to pay an employee's wages. I.C. § 45–615(2)(2004).

■ I.C. § 45–601(7) defines "wages" as *"compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis."* I.C. § 45–601(7)(2004)(emphasis added). Moore's damages under the Employment Agreement do not constitute wages or "compensation for services rendered."

Contrary to Moore's position, the panel did not rule that the amount owed on Moore's Employment Agreement claim constitutes monies owed for unpaid wages. The arbitrators awarded Moore damages under the heading of "Wage Claim," but the mere use of this shorthand term does not suggest the panel intended the award to represent wages. Instead, these damages were part of a liquidated damages provision as articulated in the Employment Agreement. Moore's damages most closely resemble a claim for "future wages". The Court of Appeals has previously alluded to the fact that claims for future wages do not fall within the purview of the mandatory trebling statute. *See Whitlock v. Haney Seed Co.*, 114 Idaho 628, 633, 759 P.2d 919, 924 (Ct.App.1988)(in recalculating "future wage" damage award, Court of Appeals did not apply the trebling statute).

*Neal* and *Polk*, relied on by Moore, are distinguishable from the facts of this case. In *Neal* the employee fully performed the terms of his employment agreement to work up to 60 days or until his employer's company was sold. *Neal v. Idaho Forest Indus., Inc.*, 107 Idaho 681, 683, 691 P.2d 1296, 1298 (Ct.App.1984). *Polk* involved a claim for unpaid commissions on sales made by employees during the course of their employment. *Polk v. Larrabee*, 135 Idaho 303, 309, 17 P.3d 247, 253 (2000). Trebling was merited in both these cases because the award was for unpaid wages on services actually rendered. Unlike *Neal* and *Polk*, Moore's damages were not for services rendered. Instead, the award constituted part of a liquidated damages provision due and owing in the event Omnicare terminated Moore "without cause." The district court properly affirmed the panel's denial of treble damages on Moore's Employment Agreement claim.

## VII.

### OMNICARE IS NOT ENTITLED TO ATTORNEY FEES IN THEIR DEFENSE OF MOORE'S APPEAL

■ Idaho Code § 12–121 allows for the award of reasonable attorney's fees to a prevailing party or parties in a civil action. I.C. § 12–121(2004). The Court has interpreted I.C. § 12–121 to allow for the award of reasonable attorney fees where an appeal has been pursued and/or defended frivolously, unreasonably or without foundation. I.C. § 12–121; *Gustaves v. Gustaves*, 138 Idaho 64, 71, 57 P.3d 775, 782 (2002); *Chicoine*, 127 Idaho at 228, 899 P.2d at 441, *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). This Court will not award attorney fees where the losing party brought the appeal in good faith and where a genuine issue of law was presented. *Fairfax v. Ramirez*, 133 Idaho 72, 79, 982 P.2d 375, 382 (Ct.App.1999).

■ I.C. § 7–910 prohibits an award of attorney fees in arbitration absent an express agreement by the parties. I I.C. § 7–910; *Emery*, 120 Idaho at 246, 815 P.2d at 444; *Bingham County Comm'n*, 105 Idaho at 42, 665 P.2d at 1052; *Storrer*, 129 Idaho at 746, 932 P.2d at 374. However, this statute only applies to fees "incurred in the conduct

of the arbitration," not those incurred in proceedings to confirm an arbitration award. *Driver*, 139 Idaho at 430, 80 P.3d at 1031.

Moore has done little more than ask this Court to re-evaluate the well-reasoned opinion of the district court, arguing that the UAA does not apply to his employment agreement under I.C. § 7–901. This argument ignores the language of I.C. § 7–901 that the UAA will apply to employment contracts where the parties have so agreed. I.C. § 7–901. However, in the totality of this case there is a mixed result. Attorney fees are not awarded.

With respect to attorney fees on Omnicare's cross appeal, Omnicare has not prevailed on all issues on the cross appeal. Attorney fees on the cross appeal are denied. *See Fairfax*, 133 Idaho at 78, 982 P.2d at 381.

## VIII.

### CONCLUSION

The district court's Judgment is affirmed in part and reversed in part. The Idaho UAA and not the FAA applied to the substantive law of the parties' contract. With respect to the Judgment to vacate the arbitration panel's award of attorney fees on Mednat's Earnings Holdback claim the judgment is affirmed. With respect to the decision to confirm the arbitration panel's award of costs and prejudgment interest the decision to confirm costs is reversed since this award was outside the scope of the panel's authority. The decision to confirm the award of prejudgment interest is affirmed. The district court's decision to affirm the panel's decision to deny treble damages and attorney fees on Moore's Employment Agreement Claim is affirmed. Omnicare is awarded costs in defense of Moore's appeal.

Justices TROUT, BURDICK and JONES concur.

Justice EISMANN, specially concurring.

I concur in the majority opinion, but write to add a further comment regarding Mednat's contention that the arbitration panel had authority to award attorney fees pursuant to AAA rules. Those rules authorize an arbitrator to award attorney fees if "the award is authorized by law." Mednat contends that Idaho Code §§ 12–120(3) and 12–

121 authorize the awarding of attorney fees in arbitration proceedings. Idaho Code § 12–120(3) provides that "the court" shall award attorney fees to the prevailing party "[i]n any civil action" to recover in a commercial transaction. Likewise, Idaho Code § 12–121 permits "the judge" to award attorney fees to the prevailing party "[i]n any civil action." The arbitration panel was neither a court nor a judge, and the arbitration proceedings were not a civil action. A civil action is commenced by filing a complaint with the court. *Northwest Pipeline Corp. v. State, Dept. of Employment,* 129 Idaho 548, 928 P.2d 898 (1996) (attorney fees could not be awarded under § 12–121 on appeal to Supreme Court from Industrial Commission's administrative ruling because it was not a civil action, which must be commenced by filing a complaint with the court); *Lowery v. Board of County Comm'rs,* 117 Idaho 1079, 793 P.2d 1251 (1990) (appeal of decision by county commissioners, commenced by filing a petition for review in the district court, is not a civil action to which § 12–121 applies). Statutes permitting or requiring a court to award attorney fees to the prevailing party in a civil action do not authorize the award of attorney fees by an arbitration panel in arbitration proceedings.