155 P.3d 1161

**Daryl NORTON, Plaintiff–Appellant,**

v.

**CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant–Respondent.**

No. 31558.

Supreme Court of Idaho,
Boise, February 2007 Term.

Feb. 22, 2007.

Garry L. Gilman, Boise, for appellant.

Anderson, Julian & Hull, LLP, Boise, for respondent. Robert A. Anderson argued.

JONES, Justice.

This case concerns the scope of an arbitration agreement. The district court modified an arbitration award at the request of the Respondent, California Insurance Guarantee Association ("CIGA"). Appellant, Daryl Norton, appeals the district court's judgment modifying the arbitration award. We affirm.

### I.

This case arises out of a motor vehicle accident that occurred in Salt Lake City, Utah, on October 18, 1999, when a third party driver ran a red light and broad-sided Norton's vehicle. Norton suffered personal injuries as a result of the accident, including herniated disks at two levels in his neck that required surgical fusion. At the time of the accident, the third party driver maintained automobile insurance through Utah Farm Bureau, while Norton was insured under a policy issued by Reliance Insurance Company.[1] Utah Farm Bureau determined that coverage was proper and paid Norton the full policy limit of $25,000, an amount that did not cover all of his damages. Norton sought additional recovery under the Reliance policy, which provided $1,000,000 of underinsured motorist coverage. However, Reliance filed for bankruptcy protection and went into receivership before addressing Norton's un-

---

1. The named insured under the Reliance policy was Norton's employer, Innovations Successful Salon Services, Inc., a California Company, and at the time of the accident Norton was driving a company-owned vehicle.

derinsured motorist claim. Norton's claim was then referred to CIGA, an entity created pursuant to California statute for the purpose of providing protection to insureds of insolvent California insurance companies, such as Reliance.

When negotiations failed between the parties, Norton informed CIGA of his desire to arbitrate his claim in Idaho and presented it with a proposed arbitration agreement. CIGA refused to sign the agreement, electing instead to prepare an arbitration proposal of its own. CIGA presented its proposal to Norton in a letter dated September 25, 2003, which set forth the terms upon which it would be willing to arbitrate, including that arbitration would be pursued in Idaho. Norton agreed to CIGA's proposed terms. On January 27, 2004, CIGA sent Norton a letter informing him of various limitations placed upon it by the California Insurance Code, including that it was entitled to certain setoffs and would be statutorily prohibited from paying any proceeds until such setoffs had been established and documented. The letter further informed Norton that CIGA wished to vacate the arbitration because the issue of setoffs was unresolved. CIGA then filed a notice of withdrawal from arbitration. The arbitrator denied its request, finding that the parties had not mutually agreed to vacate the arbitration, and arbitration hearings were subsequently held in February 2004. The arbitrator found that Norton suffered $425,474.08 in damages as a result of the accident and entered an award in that amount in favor of Norton and against CIGA.

Following entry of the arbitrator's award, Norton filed an application in district court to confirm the award and for entry of judgment. CIGA responded by filing a motion to vacate or modify the award. The district court denied Norton's application and granted CIGA's motion to modify, finding that the arbitrator had ruled on matters not submitted to him under the parties' arbitration agreement. The district court modified the award to decree that Norton's damages resulting from the collision were $425,474.08, but that the award could not be entered against CIGA. It further provided that whether Norton's claim is covered under CIGA's statutory authority and whether CIGA is entitled to any offsets must be determined in subsequent proceedings. The district court subsequently denied Norton's motion to alter or amend the judgment entered on its order or, in the alternative, for relief from the judgment.

## II.

The question presented is whether the arbitrator ruled on a matter not submitted to him by entering an award against CIGA. We hold that he did and affirm the district court's modification of the arbitration award.

## A.

"When reviewing a district court's decision to vacate or modify an award of an [arbitrator] this Court employs virtually the same standard of review as that of the district court when ruling on the petition." *Moore v. Omnicare, Inc.*, 141 Idaho 809, 814, 118 P.3d 141, 146 (2005). Judicial review of an arbitrator's decision is strictly limited under the Uniform Arbitration Act, I.C. § 7–901 et seq., and even if a reviewing court believes some of the arbitrator's rulings are erroneous it must confirm the arbitrator's award unless it finds one of the enumerated grounds for relief set forth in Idaho Code §§ 7–912 or 7–913. I.C. § 7–911; *American Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 398, 94 P.3d 699, 703 (2004). Limited judicial review of an arbitrator's decision is required to preclude a court from substituting its own judgment for that of the arbitrator. *Chicoine v. Bignall*, 127 Idaho 225, 227, 899 P.2d 438, 440 (1995).

## B.

Norton claims that the district court improperly modified the arbitration award, arguing that all of the matters upon which the arbitrator ruled were submitted to him pursuant to the parties' arbitration agreement. CIGA contends that the parties never asked the arbitrator to determine the issue of its liability and that the arbitrator ruled on a matter not submitted to him by entering an award requiring it to pay the full amount of Norton's damages.

■ A reviewing court shall modify an arbitration award where the arbitrator has "awarded upon a matter not submitted to [him] and the award may be corrected without affecting the merits of the decision upon the issues submitted." I.C. § 7–913(a)(2). An arbitrator's authority is derived from the parties' arbitration agreement. *Hecla Mining Co. v. Bunker Hill Co.*, 101 Idaho 557, 564, 617 P.2d 861, 868 (1980). An arbitrator exceeds his authority and jurisdiction when he rules on an issue not submitted by the parties. *See e.g., Moore*, 141 Idaho at 816, 118 P.3d at 148 (when determining the scope of the arbitrator's powers, look to the matters submitted for arbitration); *Bingham County Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 42, 665 P.2d 1046, 1052 (1983) (holding that "courts construe the phrase 'exceeded his powers' to mean that the arbitrator considered an issue not submitted to him by the parties, or exceeded the bounds of the contract between the parties").

Norton asserts that the arbitrator had very broad authority to rule on all issues necessary to resolve the underinsured motorist claim because the parties' arbitration agreement contained no express limitations on the arbitrator's power. Norton relies upon this Court's statement in *Hecla Mining Co.*, 101 Idaho at 564, 617 P.2d at 868, that "[a]bsent express limitation by the parties, the resulting grant of authority [to an arbitrator] is very broad." In *Hecla*, the parties stipulated in their arbitration agreement that they would arbitrate "all issues in dispute arising out of or in connection with that certain Agreement." 101 Idaho at 560, 617 P.2d at 864. When an issue arose regarding the scope of the arbitrator's authority, this Court held that pursuant to the broad language of the parties' arbitration agreement, which lacked any limiting language, all disputed issues relating to the "certain Agreement" had been submitted to the arbitrator for resolution. *Id.* at 564, 617 P.2d at 868.

■ CIGA's letter to Norton dated September 25, 2003, constituted the arbitration agreement in this case. Unlike the arbitration agreement in *Hecla*, it contained an express delineation of matters that were to be submitted to arbitration:

> Given the foregoing, this letter will confirm that CIGA is in agreement to pursue arbitration in Idaho *in order to resolve the issue of whether the accident in which Mr. Norton was involved actually caused the personal injuries of which he complains, and the extent of any associated monetary damages* in excess of $25,000, which Mr. Norton has already received from the adverse driver's insurance carrier.

(emphasis added). The terms of the arbitration agreement expressly restricted the issues to whether the accident "actually caused" Norton's injuries and the extent of "associated monetary damages." As a practical matter, resolving these issues would in effect settle what Reliance's liability would have been under its policy had it not filed bankruptcy. However, it is clear that CIGA's liability is not coextensive with that of Reliance due to the fact that whatever liability it may have arises under the California Insurance Code, which defines the scope of its powers, duties, and protections, while Reliance's liability arose under its policy. Nowhere in the parties' agreement does it indicate they submitted the issue of CIGA's liability to the arbitrator, and the district court aptly stated that "[t]he arbitrator apparently treated CIGA as if it were Reliance" when it required CIGA to pay the full amount of Norton's damages.

A subsequent exchange of letters between the parties substantiates that the arbitration agreement restricted the issues submitted to causation and the extent of damages. In a letter dated November 12, 2003, Norton stated "I believe [the September 25 letter] reflects that the issues of coverage and liability are *not* subject to arbitration, and that we are left with the issues of causation and damages," thereby seemingly conceding that the issues of CIGA's liability was not submitted to the arbitrator. (emphasis added). In a letter dated January 27, 2004, CIGA reiterated that the matter of its coverage and liability was not submitted to arbitration and stated that its duties and liabilities were not coextensive with that of an insolvent insur-

er's obligations.[2] Thus, the arbitration agreement confined the arbitrator's authority and jurisdiction to resolving the issue of Reliance's liability. The district court correctly determined that the arbitrator ruled on a matter not submitted to him by determining CIGA's liability and entering an award against it.

Last, Norton asserts that even if the arbitrator ruled on matters not submitted to him, the district court's modification was improper pursuant to Idaho Code § 7–913(a)(2) because it affected the merits of the decision upon the issues submitted for arbitration—by converting a resolved underinsured motorist claim into an unresolved claim. Under Idaho Code § 7–913(a)(2), a reviewing court may only modify an arbitrator's award if the modification does not affect "the merits of the decision upon the issues submitted." The district court determined that the arbitrator ruled on matters not submitted to him and erroneously treated CIGA as if it were Reliance when it entered an award against it. As a result, the district court modified the arbitrator's award to decree that Norton's damages as a result of the accident were $425,474.08, but that "[t]he modification should not be construed as a requirement that CIGA pay Norton $425,474.08." This result was based upon the court's review of the definition of "covered claims" in the California Insurance Code and its conclusion that:

> [I]t is clear that CIGA is not required to pay all damages sustained by an insured, only those that are covered, or those claims that remain after other insurers have paid or denied claims. If Norton has received payment from any other insurer,

such collateral sources are statutorily offset under the California Insurance Code. The district court stated that "presentation of evidence concerning whether Norton's claim is covered under CIGA's statutory authority and whether CIGA is entitled to any offsets must be determined in subsequent proceedings." Thus, the district court's modification of the arbitration award was consistent with the requirements of Idaho Code 7–913(a)(2) because it preserved the merits of the issues submitted—causation and damages—while affecting only the issue of CIGA's liability, which was not submitted for arbitration.

### C.

Norton seeks attorney fees and costs for the confirmation proceedings below and for pursuing this appeal under Idaho Code § 7–914, which permits an award of attorney fees "upon the granting of an order confirming, modifying or correcting an award." However, because Norton was not the prevailing party below and is not the prevailing party on appeal, his request is denied. *Barbee v. WMA Securities, Inc.*, 143 Idaho 391, 397, 146 P.3d 657, 663 (2006).

### III.

The district court's order and judgment modifying the arbitrator's award are affirmed. CIGA is entitled to costs.

Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK concur.

---

**2.** CIGA does not contest coverage of Norton's claim under the Reliance policy. Rather, it contends that this coverage issue is completely unrelated to the issue of whether and to what extent Norton's damages are included within the definition of "covered claims" in section 1063.1(c)(1) of the California Insurance Code. In its closing statement to the arbitrator, CIGA argued the coverage issue as follows:

> To the extent Plaintiff argues that coverage in this matter was conceded, Defendants do not deny that, as a general matter. However, because of the bankruptcy of Reliance Insurance

Company, coverage in this case is now subject to the California Insurance Guarantee Association and the California Insurance Code. Accordingly, all offsets to which CIGA is entitled will have to be determined as subsequent action brought to enforce whatever Judgment may be entered in this matter. Effectively, beyond any determination of what damages may have flowed from the motor vehicle accident, the arbitrator has no authority to order CIGA to pay that amount without the offsets to which it is entitled having first been established.