# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52009

LEON G. KHALSA, a single man, )
)
   Plaintiff-Appellant, )
)
v. )
)
DONNA J. RIDNOUR, a widow, )
)
   Defendant-Respondent, )
)
and )
)
LULAH AVIS SCHNEIDER, deceased, and )
any and all heirs, devisees and beneficiaries of )
the ESTATE OF LULAH AVIS )
SCHNEIDER, deceased, and all other persons )
or entities claiming an interest in the following )
described real property: )
)
   Defendant. )
)
Parcel 1: )
A portion of Lots 11 and 12, Block 2, )
Schneiders Beach Lots No. 2, according to the )
plat thereof, recorded in Book 1 of Plats, Page )
193, records, Bonner County, Idaho, more )
particularly described as follows: )
)
Commencing at the South corner intersection )
of Lots 10 and 11, Block 2, Schneider's Beach )
Lots No. 2; thence North 55 degrees 56'00" )
East, 50.00 feet; thence North 27 degrees )
39'00"West, 115.05 feet; thence South 56 )
degrees 01'56" West to a point that bears )
North 33 degrees 05'56" West, 114.55 feet, )
more or less, from the point of beginning; )
thence South 33 degrees 05'56" East, 114.55 )
feet, more or less, to the point of beginning. )
)
Parcel 2: )
)

Coeur d'Alene, September 2025 Term

Opinion filed: February 9, 2026

Melanie Gagnepain, Clerk

**That portion of the Northeast quarter of**
**Section 12, Township 60 North, Range 5 West,**
**Boise Meridian, Bonner County, Idaho**
**described as follows:**

**That portion of the above-described Parcel 1**
**lying Southeasterly of the sidelines extended to**
**the shoreline of Priest Lake.**

)
)
)
)
)
)
)
)
)
)

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Susie D. Jensen, District Judge.

The order of the district court is <u>affirmed</u>.

Washington State Department of Enterprise Services, Sandpoint, for Appellant. Amy C. Clemmons argued.

Sandpoint Law, P.A., Sandpoint, for Respondent. D. Toby McLaughlin argued.

_____

MOELLER, Justice.

This appeal concerns a district court's denial of a motion to vacate an arbitration award. Leon G. Khalsa ("Khalsa") and Donna J. Ridnour ("Ridnour") are neighbors with a contentious history involving access rights to a lake and beach area. After an eight-day arbitration, the arbitrator largely found in Ridnour's favor. Khalsa filed a Motion to Vacate, Correct, and Stay Arbitration Award (the "motion to vacate") in district court, arguing that the arbitrator exceeded his authority, which the court denied. For the reasons explained below, this Court affirms the district court's order denying Khalsa's motion to vacate.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Ridnour owns a lakefront lot on Priest Lake (the "front property") in Bonner County, Idaho. Khalsa owns the lot directly behind Ridnour (the "rear property"), which does not border the lake. The former owners of the rear property established multiple appurtenant easements through litigation with Ridnour, including access paths to the beach, the lake, and the main road, as well as a docking easement and a parking easement. In 2017, Khalsa purchased the rear property.

Ridnour and Khalsa have had a contentious relationship for several years. Among Khalsa's claims, he asserts that Ridnour has: (1) intentionally sprayed him with her sprinklers, (2) parked

her vehicles in a manner that blocked his lake view and lake access easement, (3) positioned a bright light to shine into his house, and (4) threw his belongings onto the beach. Ridnour denies these allegations, along with many other of Khalsa's grievances.

In 2019, a dispute arose concerning the various easements between the front and rear properties and litigation ensued. Halfway through a four-day court trial, before Ridnour presented her case, the district court suggested that the parties attempt to negotiate an agreement. With the district court acting as the mediator, the parties reached a settlement agreement, which was read into the record in open court. Both parties then agreed to the terms of the agreement on the record. However, when the parties attempted to reduce their agreement to writing, they were unable to agree on the terms. Consequently, the district court drafted and entered the Stipulated Agreement and Order ("the Agreement").

The Agreement addressed issues related to the beach, lake, main road, and docking easements, and it provided for mediation and arbitration in the event of any further dispute between the parties. Per the Agreement, Ridnour and Khalsa became tenants in common with respect to the beach portion of the front property ("Joint Beach Property"). The Agreement also granted Khalsa the right to build a patio for his exclusive use on the Joint Beach Property, specifying the size and location of the patio. Ongoing concerns related to the parking easement were also addressed in the Agreement, requiring Ridnour and any of her guests and invitees to first exhaust certain designated parking spots before blocking Khalsa's window. Importantly, the Agreement provided for mediation and arbitration "[i]n the event a dispute arises between the parties relating to the use of the Joint Beach Property or in relation to the various rights, agreements, and easements established by this Order . . . ."

After the Agreement was entered, each party filed motions to modify the terms of the Agreement. The district court entered an order making a single change to the Agreement that expanded the size of the docking easement to allow Khalsa to moor additional flotation devices. Both Ridnour and Khalsa then signed the Agreement.

Significant disagreement quickly arose regarding the construction of Khalsa's new patio. Ridnour claimed that Khalsa did not build the patio in the location designated in the Agreement and complained that the lack of retaining walls was causing her land to erode. As a result, and in accordance with the Agreement, the parties sought a mediator to resolve the issues with the patio and several of the easements. When Khalsa and Ridnour were unable to resolve their issues through

3

mediation, they submitted their disputes to arbitration. The parties selected Michael B. Hague to act as arbitrator. After an eight-day arbitration and four months of deliberation, the arbitrator issued a Memorandum Decision and Order ("Memorandum"). The arbitrator found in favor of Ridnour on all the issues argued at the arbitration, concluding that while she had acted consistent with the terms of the Agreement, Khalsa had not.

Khalsa moved to vacate the arbitration award in the district court. He raised two primary claims: the arbitrator (1) exceeded his authority by altering the terms of the Agreement entered by the district court; and (2) acted with bias because he did not enforce the benefits promised to Khalsa in the Agreement. Ruling from the bench, the district court denied Khalsa's motion, finding that the arbitrator had acted properly. Khalsa timely appealed.

## II.    STANDARDS OF REVIEW

"When reviewing a district court's decision to vacate or modify an award of an arbitration panel this Court employs virtually the same standard of review as that of the district court when ruling on the petition." *Moore v. Omnicare, Inc.*, 141 Idaho 809, 814, 118 P.3d 141, 146 (2005). An "arbitrator's decision is binding on the reviewing court both as to questions of law and fact." *Deelstra v. Hagler*, 145 Idaho 922, 924, 188 P.3d 864, 866 (2008) (citing *Driver v. SI Corp.*, 139 Idaho 423, 426, 80 P.3d 1024, 1027 (2003)). Judicial review of an arbitrator's decision is "limited to an examination of the award to discern if any of the grounds for relief stated in the Uniform Arbitration Act exist." *Bingham Cnty. Comm'n v. Interstate Elec. Co.*, 105 Idaho 36, 42, 665 P.2d 1046, 1052 (1983); *see Moore*, 141 Idaho at 814–15, 118 P.3d at 146–47. "An arbitrator's rulings on questions of law and fact are binding, even where erroneous, unless one of the enumerated statutory grounds is present." *Moore*, 141 Idaho at 815, 118 P.3d at 147. "An arbitrator's award may not be set aside for mere error in the law or fact." *Id.* at 818–19, 118 P.3d at 150–51.

## III.    ANALYSIS

On appeal, Khalsa asserts the district court erred when it denied his motion to vacate the arbitration award under Idaho's Uniform Arbitration Act ("UAA"), I.C. §§ 7-901 to 7-922, because the arbitrator acted with bias and exceeded his authority. Ridnour counters that there is substantial evidence supporting the district court's finding that the arbitrator merely interpreted the provisions of the Agreement; therefore, he did not exceed his authority. Additionally, each party seeks attorney fees incurred in this appeal. For the reasons set forth below, we hold that the arbitrator did not act with bias or exceed his authority and that Ridnour is entitled to attorney fees on appeal.

4

**A. The district court did not err in affirming the arbitrator's award because Khalsa failed to establish that the arbitrator "exceeded his powers" or "acted with evident partiality."**

*1. A brief overview of the UAA.*

To understand the scope of an arbitrator's authority, a brief overview of the UAA is beneficial. Idaho Code section 7-912 provides that a court must vacate an arbitration award upon a party's application if any one of five enumerated grounds is established:

> (1) The award was procured by corruption, fraud or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7-905, Idaho Code, as to prejudice substantially the rights of a party; or
>
> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 7-902, Idaho Code, and the party did not participate in the arbitration hearing without raising the objection.

I.C. § 7-912(a)(1)–(5). Relevant to this case are the second and third grounds: where "[t]here was evident partiality by an arbitrator" and where "[t]he arbitrators exceeded their powers[.]" I.C. § 7-912(a)(2), (3). Importantly, the UAA provides that "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." I.C. § 7-912(a).

Based on the language of the UAA, a reviewing court is limited in its authority to examine an arbitrator's decision. *Mumford v. Miller*, 143 Idaho 99, 100, 137 P.3d 1021, 1022 (2006). If none of the statutory grounds for relief are present, the arbitrator's decision is binding on the court, even where there are errors of fact or law. *Cedillo v. Farmers Ins. Co. of Idaho*, 158 Idaho 154, 159, 345 P.3d 213, 218 (2015). The rationale for the limited judicial review of decisions reached through arbitration is clear:

> [Courts] should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise, "plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final."

*Hecla Mining Co. v. Bunker Hill Co.*, 101 Idaho 557, 562–63, 617 P.2d 861, 866–67 (1980) (alteration in original) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)).

In *Hecla*, this Court rejected an effort to vacate an arbitration award, holding that "we are precluded from substituting our interpretation of the submitted contract for that of the arbitrator . . . ." *Id.* at 566, 617 P.2d at 870. This Court noted its agreement with the definitive holding of the United States Supreme Court in *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 599 (1960): "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 562, 617 P.2d at 866 (quoting *United Steelworkers of Am.*, 363 U.S. at 599). Therefore, it is well-settled law that to overturn an arbitrator's award, the complaining party "must clear a high hurdle. It is not enough . . . to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). In summary, under the UAA, neither the district court below, nor this Court on appeal, are permitted to delve into the merits or even the wisdom of the arbitrator's decision; we may only determine whether the district court properly determined that none of the grounds for relief in section 7-912(a) were present.

2. *While Khalsa preserved for appeal his claim that the arbitrator was biased, he failed to support it with sufficient authority.*

Khalsa argues that because the arbitrator acted with bias, its award should be vacated pursuant to Idaho Code section 7-912(a)(2). Specifically, he claims that "the arbitrator's failure to uphold any of the benefits of the bargain promised to Khalsa constituted bias." Ridnour counters that the issue of bias was raised for the first time on appeal and, even if it were preserved, Khalsa has not established bias. Importantly, "a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for a hearing or a party preserves an issue for appeal if the trial court issues an adverse ruling. Both are not required." *Children's Home Soc'y of Idaho v. Labrador*, ___ Idaho ___, ___, 572 P.3d 162, 180 (2025) (quoting *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022)).

Although this is a close question, we conclude that Khalsa preserved the issue of bias. Khalsa did not list bias among his reasons for setting aside the arbitrator's award in his motion. However, during oral arguments on the motion to vacate, Khalsa's counsel stated, "Mr. Khalsa is saying that the arbitrator exceeded his power and authority and that the arbitrator acted with *partiality* because he's only enforcing one side of this [A]greement and he altered a number of

6

terms of the [A]greement." (Emphasis added). Ridnour's counsel only responded to this assertion by pointing out that the issue had not been briefed. The court did not respond to either argument in denying Khalsa's motion. Importantly, the district court's failure to address this issue is not fatal if it was properly raised by Khalsa below. We conclude that "partiality," as used in section 7-912(a)(2) and asserted by Khalsa before the district court, is synonymous with "bias," the term used in Khalsa's appellate briefing. Therefore, while the discussion on the issue in the record below was minimal, we conclude that Khalsa did raise the issue of partiality below and cited the UAA as his authority.

Addressing the merits, Khalsa's sole evidence of bias is that the arbitrator found in favor of Ridnour on each issue. However, an undesirable outcome alone is not sufficient to prove bias. *See Idaho Dep't of Health & Welfare v. Doe (2016-27)* (*In re Doe Children*), 161 Idaho 660, 664, 389 P.3d 946, 950 (2016) ("[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion . . . [and] opinions formed by the judge on the basis of facts introduced or events occurring in the course of the . . . proceedings . . . do not constitute a basis for a bias or partiality motion . . . ."). In cases of judicial bias brought under Idaho Rule of Civil Procedure 40(d)(2), we have held that proof of bias must be "derived either from an extrajudicial source or facts and events occurring at trial . . . ." *Bach v. Bagley*, 148 Idaho 784, 792, 229 P.3d 1146, 1154 (2010); *see also Carroll v. MBNA Am. Bank*, 148 Idaho 261, 269, 220 P.3d 1080, 1088 (2009) (holding that a party must support a claim of bias with tangible evidence).

We conclude that Khalsa has failed to support his position on appeal with sufficient argument and authority. His briefing contained only sparse, conclusory assertions that the arbitrator was biased merely because he ruled against Khalsa. In sum, Khalsa has failed to demonstrate bias based on evidence *in the record*; thus, the arbitration award cannot be vacated on this ground.

3. *The arbitrator's findings fall within the scope of his authority and do not extend beyond interpretation of the Agreement; therefore, they are unreviewable by this Court.*

Next, we turn to Khalsa's argument that the arbitrator's award should be reversed because he exceeded his authority. Specifically, Khalsa alleges that the arbitrator overstepped his authority by: (1) reversing or reviewing the district court's prior decisions; (2) rewriting, altering, or adding terms to the Agreement; (3) declaring a portion of the Agreement unlawful; (4) quieting title to a portion of Khalsa's property; and (5) making decisions concerning the floodplain zone, permitting, setbacks, and construction.

It is well established that arbitrators only exceed their broad authority when they consider an issue not submitted to them or go beyond the bounds of the contract between the parties. *Mumford*, 143 Idaho at 101, 137 P.3d at 1023. When parties submit their issues to an arbitrator for resolution, they necessarily request the arbitrator to exercise "the factual and legal judgment that the parties bargained for . . . ." *Id.* Once the parties proceed to arbitration, they "must be content with the procedures established by the Uniform Arbitration Act." *Cady v. Allstate Ins. Co.*, 113 Idaho 667, 670, 747 P.2d 76, 79 (Ct. App. 1987) (holding that granting de novo review of an arbitration award "would annul the purpose of arbitration" by "accomplish[ing] indirectly what [the appellant] is estopped to do directly"). However, while arbitrators have broad authority, they are "not free to disregard the terms of the contracts they are reviewing—their powers derive from the parties' agreement." *Mumford*, 143 Idaho at 101, 137 P.3d at 1023. Arbitrators' decisions are unenforceable when they "stray[] from interpretation and application of the agreement and effectively 'dispense[] [their] own brand of industrial justice' that [their] decision may be unenforceable." *Stolt-Nielsen*, 559 U.S. at 671 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).

Here, the Agreement gave the arbitrator authority to settle future disputes "relating to the use of the Joint Beach Property or in relation to the various rights, agreements, and easements established by this Order . . . ." This designation appears intentionally broad, granting the arbitrator authority to rule on a wide variety of matters. In recognition of this extensive authority, the parties raised numerous issues and submitted over 75 exhibits, along with the Agreement and the district court's order, for the arbitrator to consider. The parties also submitted upwards of 150 pages of briefing to the arbitrator. Ridnour requested that the arbitrator resolve several issues: (1) the location of Khalsa's patio, (2) the location of several easements, and (3) the restrictions accompanying the parking easement. Khalsa likewise requested that the arbitrator resolve or clarify multiple issues: (1) the location of his patio, (2) whether his patio required a retaining wall, (3) the location of several easements, (4) the restrictions accompanying the parking easement, and (5) possible penalties for Ridnour's alleged interference of his quiet enjoyment of his property.

By submitting this wide array of issues to the arbitrator, it appears that *both* parties recognized that the arbitrator had been invested with broad authority to "exercise the factual and legal judgment that the parties bargained for" when they designated arbitration as the method of dispute resolution in the Agreement. *Mumford*, 143 Idaho at 101, 137 P.3d at 1023. The parties

8

expressly requested that the arbitrator use his broad authority to rule on an entire spectrum of topics. In accordance with the parties' request, the arbitrator did exactly that. It was not necessary for the arbitrator to extend his reach beyond the bounds of the contract; rather, he used the authority the parties conferred upon him to interpret the Agreement.

Khalsa correctly argues that the arbitrator was strictly bound not to vary from the Agreement in any way. However, while the Agreement was negotiated and memorialized in the middle of a court trial, it was not predicated on a ruling issued by a judge as to any of the issues of the case. It was forged by the parties and the court through mediation. Thus, many of the issues presented to the arbitrator were never adjudicated by the district court. Importantly, the Agreement authorized the arbitrator to decide disputes that might arise in the future. Thus, when presented with this matter and the demands of both parties, the arbitrator was not relitigating issues that had already been resolved by the district court; rather, the arbitrator was asked to apply the terms of the Agreement to resolve the parties' current disputes in the first instance.

With this understanding, we now turn to Khalsa's claims that the arbitrator exceeded his authority when addressing the patio, the parking easement, the maintenance corridor, and Ridnour's sprinkler system. As a preliminary matter, we note that the patio, parking easement, maintenance corridor, and sprinkler system all fall within the scope of the Agreement's language broadly empowering the arbitrator to decide matters "relating to the use of the Joint Beach Property or in relation to the various rights, agreements, and easements established . . . ." They were also issues submitted to the arbitrator by both parties in their briefing and argument. Therefore, our analysis below focuses only on whether the arbitrator acted within the scope of authority granted by the arbitration agreement, not on the correctness of his factual findings and legal holdings. As we have explained, whether or not the arbitrator's findings are erroneous is irrelevant because that is not a basis for this Court to reverse his holdings. *See* I.C. § 7-912(a).

a. Khalsa's Patio

Khalsa argues that the arbitrator went beyond his authority and essentially rewrote the Agreement in order to impose new terms. The arbitrator made two rulings concerning Khalsa's patio. First, he concluded that the patio Khalsa built did not comply with the Agreement and it must be reconstructed to adjoin the eastern border of the property. Second, the arbitrator determined that Khalsa's patio violated Idaho Code section 55-310 (2021) by threatening the

lateral and subjacent support of Ridnour's property. To remedy this danger, the arbitrator ruled that Khalsa must reconstruct his patio with a retaining wall by July 1, 2024.

Turning to the shape and location of the patio, the Agreement requires Khalsa to construct his patio so that it adjoins the southern and eastern boundaries of the Ridnour property. However, even though the eastern boundary extends at an acute angle, Khalsa built a square patio, which unnecessarily encroached onto a portion of Ridnour's property. This resulted in the patio adjoining the southern boundary but not the eastern boundary. Looking to the language of the Agreement, which requires that the patio adjoin the eastern boundary, the arbitrator held that Khalsa's patio was not in compliance because no part of it actually abutted the eastern boundary. Despite Khalsa's claims, the arbitrator only needed to look to the plain language of the Agreement to reach this conclusion; he did not add additional terms.

Khalsa also argues that the arbitrator's ruling requiring retaining walls on his patio was inappropriate because the property is located in a county-designated floodplain, and the arbitrator did not have the power to regulate floodplain sites. He argues that because Bonner County approved a permit for the patio without retaining walls, the arbitrator cannot now require them. However, it appears that Khalsa conflates the arbitrator's ruling concerning the patio with Bonner County's ability to issue building permits for floodplain sites. By ruling on the location and the configuration of the patio, the arbitrator merely interpreted the Agreement. The arbitrator did not suggest that Khalsa ignore Bonner County permit requirements to rebuild the patio. Just as Khalsa had earlier received a permit from Bonner County to build a patio that did not comply with the Agreement, he will have to do so again when he conforms it to the Agreement. Moreover, in the event that Bonner County denies a building permit for Khalsa's modified patio, then the Agreement and the Memorandum carve out the right for Khalsa to build a 6-foot by 10-foot patio in a different location.

We further conclude that, pursuant to the Agreement, the arbitrator had authority to require Khalsa to build a retaining wall for his patio. Contrary to Khalsa's claim, the arbitrator's ruling on this matter does not step outside of the bounds of his authority to interpret the Agreement. We have held that terms may be implied in a contract when "they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to express them because of sheer inadvertence or because they are too obvious to need expression." *Archer v. Mountain Fuel Supply Co.*, 102 Idaho 852, 857–58, 642 P.2d 943, 948–49 (1982). Here, the

arbitrator found that the current patio was causing erosion due to the lack of a retaining wall. Therefore, the arbitrator concluded that it was not in compliance with Idaho Code section 55-310 (2021), which protects an adjacent property owner's right to lateral and subjacent support on their land. He further concluded that compliance with Idaho law was an implied term within the Agreement, consistent with the express terms of the Agreement and the intent of the parties. In other words, even if the Agreement failed to expressly require the parties to act in compliance with the law, it only did so because it was "too obvious to need expression." (Quoting *Archer*, 102 Idaho at 857–58, 642 P.2d at 948–49). Thus, we conclude that the arbitrator did not exceed his authority on this issue.

Finally, Khalsa asserts that the arbitrator exceeded his authority by forcing him to "waive his contractual right" when he set a deadline for Khalsa to complete the patio consistent with the arbitrator's order. If the deadline was not met, the arbitrator directed that Khalsa would either have to relinquish his rights to the patio or pay Ridnour $200 per day until the patio was brought in compliance. Khalsa has not challenged the arbitrator's ability to impose a $200 per day penalty but he has generally challenged the arbitrator's ability to impose a deadline.

Given the authority the parties granted to the arbitrator to interpret the contract and resolve factual and legal issues "relating to the use of the Joint Beach Property or in relation to the various rights, agreements, and easements established," we conclude that the parties necessarily conferred the arbitrator with the implied authority to set reasonable deadlines to effectuate and enforce its orders. Khalsa does not contend that the deadline itself was unreasonable; rather, he asserts that the arbitrator lacked authority to impose any deadline at all. Accepting Khalsa's position would effectively allow him to delay building the patio indefinitely. Therefore, the arbitrator did not exceed his authority by imposing a deadline.

### b. Ridnour's Parking Easement

Next, Khalsa disputes the arbitrator's rulings on the parking easement. The arbitrator ruled on the size of the parking easement, finding that the Agreement did not limit the length to 20 feet, and stated that Ridnour was entitled to quiet title to the parking easement. Next, the arbitrator determined that Ridnour could continue to park in the area south of Ridnour's garage, provided it was south of the north exterior wall. Khalsa's main contention is that because the parking restrictions in the Agreement were unambiguous, they were not subject to alteration by the arbitrator.

11

For many of the same reasons laid out in the preceding section, this argument fails. We conclude that the arbitrator's decisions reflect a reasonable interpretation of the terms of the Agreement, rather than a modification or addition to them. First, the arbitrator's findings on the dimensions and extent of Ridnour's parking easement are rooted in the language of the Agreement, as well as the historical use of the property and supporting evidence. The Agreement does not expressly define the length of the parking easement. The arbitrator heard the evidence, interpreted the intent of the parties, and considered the demeanor and credibility of the witnesses. After reviewing the entirety of the evidence, including physical layouts, historical use, and the parties' conduct over the last 29 years, the arbitrator resolved a dispute as to the meaning and extent of the amended easement.

Khalsa also argues that the arbitrator exceeded his authority by granting Ridnour quiet title rather than enforcing the easement in the agreement. The arbitrator stated: "Ms. Ridnour is entitled to a quiet title judgment against Mr. Khalsa to that 10-foot-wide parking space easement . . . ." While not artfully expressed, the arbitrator was not purporting to assume the role of a future district court by decreeing anything to Ridnour. The arbitrator was only giving his opinion that Ridnour was entitled to quiet title based on his interpretation of the language defining the easement in the Agreement. If Ridnour chooses to file a quiet title action in the district court, the court will have to independently assess the merits of the claim. In doing so, the district court is not obligated to consider or give any weight to the arbitrator's opinion. Therefore, the arbitrator did not exceed his authority by concluding that Ridnour is entitled to seek "a quiet title judgment" concerning the 10-foot-wide parking space from the northern face of Khalsa's garage to the southern line of the abutting road.

Additionally, the arbitrator's findings on where Ridnour can park in relation to Khalsa's window was also an appropriate interpretation of the Agreement's language. The Agreement provides that Ridnour and her guests shall first utilize all the specified parking spaces to "avoid blocking Khalsa's window." The arbitrator found that, while the purpose of this provision was to make it less likely that Khalsa's view would be obstructed when Ridnour had guests, the Agreement did not grant Khalsa "a view easement." Looking to the evidence of the location of the window and Ridnour's garage, the arbitrator found that the area in dispute where Ridnour was parking does not block Khalsa's window and, thus, does not violate the Agreement. This

conclusion falls squarely within the arbitrator's authority to resolve factual disputes, interpret the contract, and apply the contractual provisions with the facts given.

### c. Khalsa's Maintenance Corridor

The next point of contention relates to Khalsa's eight-foot maintenance corridor established by the Agreement. The corridor, which would be located "just west of the footprint of the eastern patio," was intended to allow for occasional beach maintenance. Ridnour disagreed about the precise location of the maintenance corridor and submitted the issue to the arbitrator for clarification. Additionally, Khalsa requested that the arbitrator expand the maintenance corridor to "allow for equipment to access the beach area for maintenance purposes." The arbitrator determined the location of the maintenance corridor and declined to expand its size, finding that the beach very rarely required heavy equipment.

As stated above, while Khalsa may disagree with the arbitrator's legal conclusions and factual findings regarding the maintenance corridor, that is not grounds for this Court to overturn his award. The arbitrator looked to the language of the Agreement and described the location of the maintenance corridor using a metes and bounds legal description. This was not an act outside his authority.[1]

### d. Ridnour's Sprinkler System

Finally, we turn to the arbitrator's findings regarding Ridnour's sprinkler system. After finding that Ridnour did not maliciously spray Khalsa's patio with her sprinklers, the arbitrator ruled that Ridnour did not need to relocate her underground sprinkler system until after Khalsa's patio was completed. Khalsa contends that this change impermissibly reverses the district court's order instructing Ridnour to "immediately cap or relocate her sprinklers" that were near Khalsa's patio.

Again, the arbitrator looked to the very language of the Agreement, which requires Ridnour to "in good faith adjust or relocate the sprinklers . . . ." After weighing the credibility of Ridnour's family members who were witnesses, the arbitrator found that Ridnour was acting in good faith and that it was reasonable for her to wait to relocate the sprinklers until Khalsa rebuilt the non-conforming patio. We conclude that the arbitrator acted within his authority to resolve this issue regarding the sprinkler system after weighing all the evidence presented to him. Once again,

---

[1] Ironically, we note that Khalsa's request that the arbitrator expand the corridor would have required him to act beyond his authority.

Khalsa himself submitted this same question to the arbitrator. Therefore, we conclude that Khalsa failed to establish that the arbitrator went beyond his authority and imposed his own policy. Indeed, the record establishes that the arbitrator acted within his authority by making factual findings, interpreting the Agreement, and applying the contract to the facts.

## B. Attorney Fees

Ridnour seeks attorney fees under Idaho Code section 12-121 as the prevailing party on appeal. She claims that she is entitled to attorney fees for having to defend against Khalsa's frivolous appeal and asserts that Khalsa's arguments amounted to nothing more than mere disagreements with the arbitrator's rulings. In the alternative, Ridnour seeks attorney fees under the terms of the Agreement as the prevailing party in a dispute.

"[W]hen there is a choice between a statute-based entitlement to attorney fees and a contract-based entitlement to attorney fees, the contractual standard applies." *Axelrod v. Reid Ltd. P'ship*, 174 Idaho 108, 129, 551 P.3d 777, 798 (2024). Turning first to the Agreement's provision for attorney fees, it states: "The prevailing party in any arbitration shall be entitled to recover the costs of the proceedings and such reasonable attorney's fees as may be determined by the arbitrator." Whether this provision covers attorney fees incurred during the appeal of the arbitrator's award is determined by its plain language. *See Sunnyside Park Utils., Inc. v. Sorrells*, ___ Idaho ___, ___, 568 P.3d 820, 830 (2025) (citing *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010)). The Agreement's attorney fees provision does not encompass fees incurred on appeal. By its plain language, the provision is limited to fees "as may be determined by the arbitrator," which we conclude confines recovery to the arbitration proceedings themselves and does not authorize recovery of attorney fees incurred in pursuing an appeal of the award.

However, a party is entitled to attorney fees when the appeal was brought "unreasonably or without foundation." I.C. § 12-121. Further, attorney fees are warranted under Idaho Code section 12-121 when "arguments amount to a disagreement with the arbitrator's factual findings and legal conclusions." *Mumford*, 143 Idaho at 100–01, 137 P.3d 1022–23. "When an appellant fails to present a cogent argument as to why he should prevail, an award [of attorney fees] to his opponent is appropriate." *Turner v. Turner*, 155 Idaho 819, 827, 317 P.3d 716, 724 (2013) (citing *Chicoine v. Bignall*, 127 Idaho 225, 228, 899 P.2d 438, 441 (1995)).

14

Here, much of Khalsa's briefing on appeal was devoted to citing substantive evidence, some of which was not in the record, to demonstrate why the arbitrator's findings were factually incorrect. We have concluded the arbitrator acted within his authority in making the findings of fact and interpreting the Agreement. Absent any proof that the arbitrator exceeded his authority, Khalsa has merely invited us to second-guess the arbitrator's findings. The fact that Khalsa does not like the way the arbitration turned out does not give him grounds to overturn the arbitrator's award under the UAA. Therefore, we hold that Khalsa pursued this appeal frivolously and without foundation. Accordingly, while Ridnour is not entitled to attorney fees on appeal under the Agreement, she is entitled to attorney fees under Idaho Code section 12-121.

## IV.    CONCLUSION

For the reasons stated above, we affirm the district court's order denying Khalsa's motion to vacate the arbitration award. We award attorney fees on appeal to Ridnour under Idaho Code section 12-121 and costs pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.